CATHY SCHWARTZ, Plaintiff-Appellee, v. LARRY HAMBLEN *et al.*, Defendants (Judith E. Cortelloni, Defendant-Appellant).

Fourth District    No. 4—94—1120

Argued September 13, 1995.—Opinion filed December 5, 1995.—Rehearing denied January 18, 1996.

James Walker (argued), of James Walker, Ltd., of Bloomington, for appellant.

Richard Gehlbach (argued), of Lincoln, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In November 1992, plaintiff, Cathy Schwartz, filed a partition lawsuit against defendant, Judith E. Cortelloni, Schwartz' half sister, alleging that under the will of their maternal great-aunt, they owned 160 acres of Logan County farmland as tenants in common. Schwartz sought a division of the property and an accounting of the rents and profits collected by Cortelloni during her possession of the land. In July 1994, the trial court granted Schwartz the relief she requested.

Cortelloni appeals, arguing that (1) the trial court erred by (a) denying the motion to disqualify Schwartz' counsel, which was based on counsel's prior representation of Cortelloni, (b) admitting documents obtained through abuse of discovery procedures, and (c) allowing the partition complaint and finding that Schwartz, a child born out of wedlock and adopted by others, should take an equal share of a remainder interest under a will as a descendant of her biological mother; and (2) treating an adopted child under a will as a descendant of both her adopted and biological parents while her unadopted sibling is treated as a descendant of only her natural parents denies equal protection of the law to the unadopted child. Because we agree with Cortelloni's first argument, we reverse.

## I. BACKGROUND

On June 25, 1945, Katherine Wakeman executed a will, granting a life estate in the farmland in question (hereinafter the Lawndale 160) and in an additional 120 acres in Logan County to her niece, Katherine J. Malerich, with a remainder interest to the blood lineal descendants of Malerich. The terms of the will provided that "[u]pon the death of my niece, Katherine J. Malerich, I give and devise the remainder in fee in each of the above tracts of farmland to the blood lineal descendants or descendant of my said niece surviving at her death." At the time of Wakeman's execution of the will, Malerich and her husband, James E. Malerich, had one daughter, Judith (the defendant, now Judith Cortelloni, born July 15, 1944). In 1948, Wakeman died owning both the Lawndale 160 and the 120-acre property.

In July 1955, following the death of her husband, Malerich was appointed guardian of Judith's estate in Logan County circuit court (guardianship case No. 275). In September 1956, the Gehlbach law firm (consisting of Charles Gehlbach—John Gehlbach's now-deceased uncle—and John Gehlbach) appeared as attorneys for Malerich, in her role as Judith's guardian, in a petition to sell Judith's interest in four lots owned by Judith's father prior to his death (case No. 275). John Gehlbach testified that he represented the best interests of Judith when the Gehlbach law firm filed the petition in the guardian-

ship case. In 1956, Judith, her mother, and John Gehlbach went to the sheriff's office in Logan County to review "papers." In October 1956, the trial court allowed the petition. Soon after, on November 2, 1956, Cathy Schwartz was born out of wedlock to Malerich, who subsequently consented to Schwartz' adoption.

In February 1963, Malerich, as Judith's guardian and pursuant to a court order, filed an amended inventory in guardian case No. 275. That inventory listed Judith's remainder interest in the Lawndale 160 as an asset of Judith's estate. In May 1963, John Gehlbach signed a receipt for $750 for legal services rendered to Malerich as Judith's guardian, although he does not now recall for what services Malerich made the payment.

In August 1965, the court entered an order closing the guardianship estate and discharging Malerich as Judith's guardian. Neither John Gehlbach nor the Gehlbach firm ever sought or received leave to withdraw as attorneys for Malerich in her capacity as Judith's guardian.

In April 1992, Malerich died. Shortly thereafter, Tom Schwartz (husband of Cathy Schwartz) called James Hickey (an acquaintance of John Gehlbach and the Schwartzes) and said that he recently had received information that Malerich was Cathy Schwartz' biological mother and that Cathy Schwartz was interested in learning about Malerich's health history. In May 1992, Hickey relayed the substance of that conversation to John Gehlbach, who responded that he knew Malerich had another child. Following this conversation, John Gehlbach inspected the abstract of the title to the Lawndale 160, which included a copy of Wakeman's will. Subsequently, John Gehlbach told Cathy Schwartz about Katherine Wakeman and the existence and location of the Lawndale 160 (the 120-acre plot is not part of this case). At that time, Schwartz had not yet retained John Gehlbach's services in the present matter, although he had represented her in other matters.

In July 1992, John Gehlbach obtained a court order permitting him to inspect Schwartz' adoption records. In November 1992, John Gehlbach filed a partition complaint on behalf of Schwartz against Cortelloni, alleging that under Wakeman's will, Schwartz and Cortelloni, as the only children of Malerich, owned the Lawndale 160 in fee simple as tenants in common.

In August 1993, Cortelloni filed a motion to disqualify John Gehlbach and the Gehlbach firm on the ground that it had previously represented Cortelloni when it represented Malerich in her capacity as Cortelloni's guardian. In January 1994, the trial court denied the motion to disqualify. In July 1994, after conducting a hearing, the

court found that Schwartz was a child born to Malerich and ordered that (1) the Lawndale 160 be divided between Schwartz and Cortelloni, and (2) Cortelloni make an accounting of all the rents and profits she had collected from the property.

## II. ANALYSIS

Cortelloni contends that the trial court erred in denying her motion to disqualify because the Gehlbach firm owed a duty to Cortelloni as a result of representing Malerich in her capacity as guardian of Cortelloni. Further, Cortelloni asserts that the firm's present representation of Schwartz involves a matter substantially related to the firm's prior representation of Cortelloni. We agree.

### A. *Attorney-Client Relationship*

■ Initially, Cortelloni asserts that when the Gehlbach firm represented Malerich, it also represented the interests of—and owed a duty to—the ward, Judith. Although no Illinois authority so states (perhaps because it seems so clear), we agree with the court in *Fickett v. Superior Court* (1976), 27 Ariz. App. 793, 795, 558 P.2d 988, 990, that "when an attorney undertakes to represent the guardian *** he assumes a relationship not only with the guardian but also with the ward." Thus, when Gehlbach's firm represented Katherine Malerich in her capacity as guardian of Judith Malerich (now Cortelloni), it also created an attorney-client relationship with Cortelloni.

### B. *Motion To Disqualify*

■ Cortelloni next asserts that the trial court erred in denying her motion to disqualify the law firm of John Gehlbach because the firm's present representation of Schwartz involves a matter substantially related to the Gehlbach firm's prior representation of Cortelloni as a ward. The determination on a motion to disqualify lies within the trial court's discretion, and a reviewing court will reverse only when the trial court has abused its discretion. *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1053, 452 N.E.2d 804, 812.

■ Under the Rules of Professional Conduct (134 Ill. 2d R. 1.9(a)(1)), when the subject matter of a prior representation is substantially related to the subject matter of a subsequent adverse representation, the latter representation is prohibited. (*Skokie*, 116 Ill. App. 3d at 1051, 452 N.E.2d at 810.) The subject matter of two representations is "substantially related" if the attorney could have obtained confidential information in the prior representation that would have been relevant to the subsequent representation. (*Analytica, Inc. v. NPD Research, Inc.* (7th Cir. 1983), 708 F.2d 1263, 1266.)

Once a substantial relationship is found between the prior and present representations, it is irrebuttably presumed that confidential information relevant to the present representation was disclosed during the prior representation (*Herbes v. Graham* (1989), 180 Ill. App. 3d 692, 700, 536 N.E.2d 164, 168), unless the law firm itself did not switch sides, and it is uncontroverted that no confidences were shared between attorneys. See *Index Futures Group, Inc. v. Street* (1987), 163 Ill. App. 3d 654, 659, 516 N.E.2d 890, 893; *Analytica*, 708 F.2d at 1267.

■ In this case, the Gehlbach firm represented Malerich, in her capacity as Cortelloni's guardian, in a petition to sell the ward's interest in real estate owned by the ward's father prior to his death. Although Charles Gehlbach filed the petition to sell the real estate on behalf of the firm, the record shows that John Gehlbach also represented Malerich and the ward in the petition. Cortelloni testified that John Gehlbach accompanied her and her mother on a legal-related visit to the sheriff's office. Further, John Gehlbach acknowledged that when the Gehlbach law firm represented Malerich in the guardianship case, he represented the best interests of Cortelloni. Even assuming *arguendo* that Charles Gehlbach was the sole attorney for Cortelloni, it is presumed that members of a law firm share confidences and secrets of their clients. (*Skokie*, 116 Ill. App. 3d at 1057, 452 N.E.2d at 814.) In the present action, John Gehlbach and his firm are representing Schwartz in a partition suit against Cortelloni involving the Lawndale 160, a remainder interest devised under Wakeman's will.

Applying the substantial relationship test, it is reasonable to infer that confidential information relevant to the present representation of Schwartz would have been available to John Gehlbach during the firm's prior representation of Cortelloni, and that John Gehlbach could have obtained confidential information about Cortelloni's assets, including her remainder interest in the Lawndale 160, during that earlier representation. Accordingly, the subject matter of the prior and present representations are substantially related. Because this is a case where the law firm itself switched sides, it is irrebuttably presumed that confidential information relevant to the present representation was disclosed during the prior representation of Cortelloni. We therefore hold that the trial court abused its discretion in denying the motion to disqualify the firm of John Gehlbach as Schwartz' counsel.

The Gehlbach firm's prior representation of Cortelloni in a substantially related matter required the firm either to refuse to advise or represent Schwartz in the partition suit or to disclose the

arrangement to Cortelloni and obtain her consent before representing Schwartz. The Gehlbach firm did neither, choosing instead to inform Schwartz about Katherine Wakeman and the existence of the Lawndale 160, apparently in the hope of taking her case in the matter, as the firm in fact did. The acts or omissions of the Gehlbach firm in these matters are binding upon Schwartz as its client. (See *First Bank v. Carswell* (1982), 111 Ill. App. 3d 71, 73, 443 N.E.2d 755, 757.) Because the Gehlbach firm's breach of its ethical obligations so permeates this action, we reverse and remand with directions to dismiss Schwartz' complaint with prejudice.

## III. CONCLUSION

For the reasons stated, we reverse and remand with directions to dismiss Schwartz' complaint with prejudice.

Reversed and remanded with directions.

COOK, P.J., and KNECHT, J., concur.