Docket No. 80614–Agenda 13–November 1996.

CATHY SCHWARTZ, Appellant, v. JUDITH CORTELLONI 
et al.
 (Judith Cortelloni, Appellee).

Opinion filed June 19, 1997.

JUSTICE McMORROW delivered the opinion of the court:

The central question presented for our review is whether counsel for the plaintiff should have been disqualified from representing the plaintiff in the present litigation because of an alleged conflict of interest. The question arises in the context of a partition action filed in the circuit court of Logan County by Cathy Schwartz (hereafter Schwartz) against her half-sister, Judith Cortelloni (hereafter Cortelloni), seeking the division of land in Cortelloni's possession known as Lawndale 160. Schwartz, who had been adopted as a baby, alleged that she and Cortelloni had the same biological mother, Katherine Malerich. Schwartz further alleged that she and Cortelloni owned Lawndale 160 in fee simple as tenants in common because their maternal great-aunt devised the land to the “blood lineal descendants” of their mother, Katherine Malerich. During the partition proceedings, Cortelloni sought the disqualification of Schwartz's counsel, the Gehlbach law firm, because the firm formerly represented Katherine Malerich in her capacity as guardian of Cortelloni's estate when Cortelloni was a child, nearly 40 years ago. The circuit court denied Cortelloni's motion to disqualify Schwartz's counsel and granted the partition of Lawndale 160. The court also directed Cortelloni to make an accounting. Cortelloni appealed and the appellate court reversed, holding that the circuit court had abused its discretion in denying Cortelloni's motion to disqualify the Gehlbach law firm as counsel for Schwartz. 276 Ill. App. 3d 1018. As a sanction, the appellate court ordered the circuit court to dismiss Schwartz's case with prejudice. We allowed Schwartz's appeal. 155 Ill. 2d R. 315.

BACKGROUND

In June 1945, the parties' maternal great-aunt, Katherine Wakeman, executed a will which granted a life estate in Lawndale 160 to Katherine Malerich, with a remainder interest to Malerich's “blood lineal descendants or descendent.” The will also granted Malerich a life estate in property known as Elkhart 120, with a remainder interest to Malerich's blood lineal descendants.

At the time of the execution of Wakeman's will, Malerich had one child–the defendant, Judith Cortelloni. In 1948, Wakeman died, and Malerich took possession of Lawndale 160 pursuant to the life estate granted to her under the terms of Wakeman's will.

In 1953, when Cortelloni was nine years old, her father, James Edward Malerich, died in a car accident. In 1955, Cortelloni's mother, Katherine Malerich, filed a petition for the appointment of herself as guardian of Cortelloni and her estate. This case was assigned case number 275. Malerich remained the guardian of Cortelloni's estate until 1965 when the court entered an order closing case number 275.

The uncontroverted evidence presented at trial indicated that in September 1956, the Gehlbach law firm appeared on behalf of Malerich as guardian of Cortelloni in a petition bearing case number 275 to sell real estate previously owned by James Edward Malerich. Cortelloni had a one-sixth interest in the real estate which was the subject of the petition. It is undisputed that the real estate at issue in the 1956 petition had no relationship to Lawndale 160, and that the case number 275 matter concluded in October 1956 when the court entered an order approving the sale.

Further evidence showed that in November 1956, Katherine Malerich gave birth to Schwartz out of wedlock. Malerich subsequently consented to Schwartz's adoption, and Edith and John Irwin became her adoptive parents.

In April 1992, Katherine Malerich died and Cortelloni took possession of Lawndale 160, pursuant to the terms of Wakeman's will. Meanwhile, the Irwins informed Schwartz that her biological mother, Katherine, had died. Schwartz discovered Malerich's surname through a newspaper obituary, and the Irwins confirmed her biological mother's identity.

Thereafter, Thomas Schwartz, the husband of Schwartz, began making inquiries about Malerich. He informed an acquaintance, James Hickey, of his wife's discovery regarding her biological mother and her desire to learn more about her mother. Hickey testified that he later relayed this information to his friend John Gehlbach. Gehlbach indicated that he knew that Malerich had a second child because he had a client who was interested in purchasing Elkhart 120, but thought there might be a title problem due to an unknown child of Malerich, presumably Cathy Schwartz.

At the time of these various conversations in April 1992, Schwartz had not retained the Gehlbach firm's services in connection with the litigation before this court, but she had retained the firm as her counsel in unrelated legal matters.

In May 1992, John Gehlbach inspected the title to Lawndale 160, as well as a copy of Katherine Wakeman's will. In the summer of 1992, Schwartz and her husband met with John Gehlbach at his law office. The record is somewhat unclear as to the manner in which Schwartz learned of Lawndale 160 and Katherine Wakeman's will. Schwartz initially testified that prior to her first contact with the Gehlbach firm, she knew that Katherine Wakeman had died, leaving Lawndale 160. Schwartz also testified that she first learned about Katherine Wakeman's will from John Gehlbach. She stated that Gehlbach informed her that her blood relationship to Katherine Wakeman made her a proper claimant to Lawndale 160 under the terms of Wakeman's will. However, Schwartz could not precisely recall the chronology of her discoveries. John Gehlbach testified that he was the first to mention Katherine Wakeman's name at the 1992 summer meeting with Schwartz, but he could not precisely recall when he and Schwartz initially discussed the matter.

After the parties rested, the circuit court found that Schwartz was Malerich's child. The court further determined that under the terms of Katherine Wakeman's will, Schwartz had a remainder interest in Lawndale 160. The court ordered the division of Lawndale 160 between Schwartz and Cortelloni, and directed Cortelloni to make an accounting of all rents and profits collected from the property. With respect to the conflict of interest issue, the circuit court rejected Cortelloni's argument that the Gehlbach firm breached a duty owed to her. In so ruling, the court noted the length of time between the Gehlbach firm's involvement with the two separate unrelated matters. Cortelloni appealed all aspects of the judgment.

The appellate court reversed the circuit court on the conflict of interest issue. The court determined that an attorney-client relationship existed between Cortelloni and the Gehlbach law firm. See 
Fickett v. Superior Court
, 27 Ariz. App. 793, 558 P.2d 988 (1976) (when an attorney undertakes to represent a guardian he or she also assumes a relationship with the ward). The court then found that:

“[I]t is reasonable to infer that confidential information relevant to the present representation of Schwartz would have been available to John Gehlbach during the firm's prior representation of Cortelloni, and that John Gehlbach could have obtained confidential information about Cortelloni's assets, including her remainder interest in the Lawndale 160, during that earlier representation.” 276 Ill. App. 3d at 1022.

The appellate court concluded that the subject matters of the present and former representations were substantially related, and held that the circuit court abused its discretion in denying Cortelloni's motion to disqualify the Gehlbach firm as Schwartz's counsel. The appellate court found that the Gehlbach firm's ethical breach so permeated the action that Schwartz did not deserve the relief she sought. The court also sanctioned Schwartz by ordering the circuit court to dismiss her lawsuit with prejudice.

We granted Schwartz's petition for leave to appeal. For the reasons which follow, we reverse the judgment of the appellate court and remand this cause to the appellate court so that it may consider and decide issues previously not reached by it. 
Boatmen's National Bank v. Direct Lines, Inc.
, 167 Ill. 2d 88 (1995).

ANALYSIS

The threshold question to be addressed is whether the circuit court abused its discretion when it denied Cortelloni's motion to disqualify the Gehlbach law firm from serving as Schwartz's counsel.
(footnote: 1) Specifically, we must determine whether the Gehlbach law firm had a conflict of interest by virtue of its former representation of Katherine Malerich as guardian of Cortelloni. Rule 1.9 of the Illinois Rules of Professional Conduct defines the scope of an attorney's obligation to refrain from representing a person with interests that are materially adverse to the interests of a former client (134 Ill. 2d R. 1.9). Rule 1.9 provides:

“(a) A lawyer who has formerly represented a client in a matter shall not thereafter:

(1) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after disclosure; or

(2) use information relating to the representation to the disadvantage of the former client, unless:

(A) such use is permitted by Rule 1.6; or

(B) the information has become generally known.” 134 Ill. 2d R. 1.9.

It is axiomatic that only a party who has been a client of the attorney whose conduct is in question may complain of the attorney's subsequent representation of another. 7A C.J.S. 
Attorney and Client
 §161, at 233 (1980); see also 
Park-N-Shop v. City of Highwood
, 864 F. Supp. 82, 84 (N.D. Ill. 1994) (Rule 1.9 presumes that a former attorney-client relationship existed). The party seeking disqualification carries the burden of proving the existence of a former attorney-client relationship. See 7A C.J.S. 
Attorney and Client
 §164, at 240 (1980).

In the case at bar, Schwartz challenges the appellate court's conclusion that Cortelloni and the Gehlbach firm had an attorney-client relationship by virtue of the firm's former representation of Katherine Malerich in her capacity as guardian of Cortelloni's estate. Schwartz maintains that the Gehlbach firm served as counsel for the estate of James Edward Malerich in a wrongful death action, and only appeared in guardianship case number 275 to assist the James Edward Malerich estate in selling parcels of real estate which James owned prior to his death. The estate parcels to be sold in case number 275 were unrelated to Lawndale 160. She argues that because the sale was not undertaken for the primary benefit of Cortelloni, the Gehlbach firm did not owe a duty of confidentiality to Cortelloni.

Cortelloni counters by arguing that when an attorney undertakes to represent the guardian, that attorney also assumes an attorney-client relationship with the ward. 
Fickett
, 27 Ariz. App. at 795, 558 P.2d at 990. Cortelloni maintains that when the Gehlbach firm appeared on behalf of Katherine Malerich, as her guardian, it also assumed a professional obligation to her ward.

As a general rule, an attorney owes a duty only to one who is the client of the attorney. 
Geaslen v. Berkson, Gorov & Levin, Ltd.
, 220 Ill. App. 3d 600 (1991). An exception to the general rule has been recognized in limited circumstances when an attorney is hired by a client specifically for the purpose of benefiting a third party. 
Pelham v. Griesheimer
, 92 Ill. 2d 13, 21 (1982); 
Schechter v. Blank
, 254 Ill. App. 3d 560 (1993); see also 
McLane v. Russell
, 131 Ill. 2d 509 (1989)
; 
Ogle v. Fuiten
, 102 Ill. 2d 356 (1984) (an attorney may owe a fiduciary duty to intended beneficiaries under a will); but see 
Bastian v. Petren Resources Corp.
, 271 Ill. App. 3d 232 (1995) (upholding dismissal of a breach of fiduciary duty claim brought by plaintiff/investors against the law firm which represented investment promoters). In determining whether a duty is owed to a third party, the key factor to be considered is whether the attorney acted at the direction of or on behalf of the client for the benefit of a third party. 
Pelham
, 92 Ill. 2d at 21.

In the case at bar, the parties agree that the Gehlbach firm appeared on behalf of Malerich as guardian of Cortelloni's estate in the 1956 petition to sell real estate. The parties do not dispute that an attorney-client relationship existed between the Gehlbach firm and Malerich in 1956. Malerich, as Cortelloni's guardian, was obligated to act for the primary benefit of her ward in managing her property interests. 
In re Estate of Swiecicki
, 106 Ill. 2d 111, 118 (1985) (a guardian has a fiduciary relationship to a ward and is charged with acting for the primary benefit of the ward). John Gehlbach testified that when he appeared in the guardianship proceedings in 1956, he acted in Cortelloni's best interests. Thus, the Gehlbach firm acted on behalf of Malerich for the primary benefit of Cortelloni when it appeared in connection with the 1956 petition for the sale of real estate in which Cortelloni had a one-sixth interest. Under the facts presented here, we conclude that Cortelloni met her burden of proving that the Gehlbach law firm represented her in 1956, and we reject Schwartz's arguments to the contrary.

Because we determine that the Gehlbach law firm formerly represented Cortelloni, we address the issue of whether this former representation compels the firm's disqualification as Schwartz's counsel. The circuit court addressed this issue when it denied Cortelloni's motion to disqualify the Gehlbach firm in preliminary proceedings. The court also rejected her arguments at trial.

The determination of whether counsel should be disqualified is directed to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. 
Herbes v. Graham
, 180 Ill. App. 3d 692 (1989); 
Hannan v. Watt
, 147 Ill. App. 3d 456 (1986); 
Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.
, 116 Ill. App. 3d 1043 (1983). An abuse of discretion occurs where no reasonable person would agree with the position adopted by the trial court. 
In re Marriage of Los
, 136 Ill. App. 3d 26, 33 (1985). Where the question on appeal involves the resolution of factual issues, the trial court's determinations will not be disturbed unless they are unsupported by evidence in the record. 
International Insurance Co. v. City of Chicago Heights
, 268 Ill. App. 3d 289 (1994); 
Weglarz v. Bruck
, 128 Ill. App. 3d 1, 6 (1984); 
First National Bank v. St. Charles National Bank
, 152 Ill. App. 3d 923 (1987).

On appeal before this court, Schwartz argues that the events which comprise the Gehlbach firm's former involvement with Cortelloni's guardianship proceedings do not merit disqualification of the firm in this case because the two matters are unrelated. She maintains that the appellate court misapplied the abuse of discretion standard of review when it independently found a substantial relationship between the former and subsequent representations. Schwartz asks this court to reverse the appellate court because the evidence in the record supports the circuit court's finding that disqualification of the Gehlbach firm as her counsel in the present litigation is not justified.

Cortelloni responds that it is reasonable to infer that confidential information relevant to the representation of Schwartz in the case at bar would have been available and furnished to John Gehlbach during his firm's prior representation of Cortelloni, and that John Gehlbach could have obtained confidential information about Cortelloni's assets, including Lawndale 160. She contends that when the Gehlbach firm appeared in the guardianship case in 1956, it was obligated to learn about all of Cortelloni's property interests, including Lawndale 160. She maintains that based upon the following unrefuted facts in evidence the trial court erred in denying her motion to disqualify the Gehlbach firm: (1) in 1956, John Gehlbach escorted her to the sheriff's office so that she could be served with certain documents, (2) in February 1963 an inventory listing Lawndale 160 as one of Cortelloni's interests was filed in case number 275, (3) in May 1963, John Gehlbach signed a receipt in payment for services rendered on behalf of Malerich as guardian of Cortelloni and (4) the Gehlbach law firm did not formally withdraw from the guardianship case after the 1956 real estate sale. Based on these facts Cortelloni asks this court to affirm the appellate court's holding that the trial court abused its discretion in denying her motion to disqualify the Gehlbach law firm.

We recognize that a qualified fiduciary duty survives the termination of an attorney-client relationship. 1 G. Hazard & W. Hodes, The Law of Lawyering §1.9:104, at 292 (2d ed. 1990). Under Rule 1.9 of the Illinois Rules of Professional Conduct an attorney's subsequent representation of a person with interests adverse to a former client is prohibited only if the matters involved in the two representations are the same or substantially related. 134 Ill. 2d R. 1.9; see generally 
La Salle National Bank v. County of Lake
, 703 F.2d 252, 255 (7th Cir. 1983); 
Herbes v. Graham
, 180 Ill. App. 3d 692, 700 (1989). The party seeking disqualification bears the burden of establishing that the present and former representations are substantially related. 
Hannan v. Watt
, 147 Ill. App. 3d 456, 464 (1986). If a substantial relationship between the two matters is not shown, then no breach of the duty of confidentiality will be found. 
President Lincoln Hotel Venture v. Bank One, Springfield
, 271 Ill. App. 3d 1048 (1994).

Attorney disqualification is a drastic measure because it destroys the attorney-client relationship by prohibiting a party from representation by counsel of his or her choosing. 
SK Handtool Corp. v. Dresser Industries, Inc.
, 246 Ill. App. 3d 979, 989 (1993). Thus, caution must be exercised to guard against motions to disqualify being used as tools for harassment. See 
International Insurance Co. v. City of Chicago Heights
, 268 Ill. App. 3d 289 (1994); 
Freeman v. Chicago Musical Instrument Co.
, 689 F.2d 715 (7th Cir. 1982).

In the case at bar, the parties advocate different methods for determining whether the evidence in the record is sufficient to show a substantial relationship between the Gehlbach firm's 1956 appearance in case number 275 and the firm's representation of Schwartz in the present litigation. Schwartz suggests that courts should conduct the three-part inquiry set forth in 
La Salle National Bank v. County of Lake
, 703 F.2d 252 (7th Cir. 1983). Under the 
La Salle
 inquiry, the court first must make a factual reconstruction of the scope of the former representation. Then, it must determine whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, the court must consider whether the information is relevant to the issues raised in the litigation pending against the former client. 
La Salle
, 703 F.2d at 256. At each level of inquiry, deference must be paid to the trial court's determinations. 
La Salle
, 703 F.2d at 256.

In contrast, Cortelloni argues that the Gehlbach firm's disqualification is mandated by Rule 1.9 of the Illinois Rules of Professional Conduct, by Canon 4 (107 Ill. 2d Canon 4) (“A lawyer should preserve the confidences and secrets of a client”) and by Canon 9 (107 Ill. 2d Canon 9) (“A lawyer should avoid even the appearance of professional impropriety”) of the Illinois Code of Professional Responsibility (Illinois Code). Cortelloni submits that the appropriate test for disqualification is simply whether the lawyer could have obtained confidential information in the first representation that would have been relevant in the second. See 
Analytica, Inc. v. NPD Research, Inc.
, 708 F.2d 1263, 1266 (7th Cir. 1983).

Initially, we address Cortelloni's reliance on Canons 4 and 9 of the Illinois Code. On August 1, 1990, the Illinois Code was repealed and superseded by the Illinois Rules of Professional Conduct. 
SK Handtool Corp. v. Dresser Industries, Inc.
, 246 Ill. App. 3d 979 (1993). The new Illinois Rules were modeled after the American Bar Association Model Rules of Professional Conduct (Model Rules). 
SK Handtool Corp.
, 246 Ill. App. 3d at 988. The ABA comment to Model Rule 1.9 specifically rejects the “appearance of impropriety standard” in Canon 9 as the basis for disqualifying counsel. The ABA comment instead advocates a factual based evaluation of the two representations to determine whether duties to a former client would be compromised by a subsequent representation. Annotated Model Rules of Professional Conduct R. 1.9, at 165 (2d ed. 1992).

We adhere to the ABA's recommendation that an attorney should not be disqualified from representing a client whose interests are adverse to a former client solely on the basis that the subsequent representation may create the appearance of impropriety. Such a standard is “simply too weak and too slender a reed” upon which to order disqualification. 
Index Futures Group, Inc. v. Street
, 163 Ill. App. 3d 654, 659 (1987); see also 
President Lincoln Hotel Venture v. Bank One, Springfield
, 271 Ill. App. 3d 1048 (1994); but see 
First American Carriers, Inc. v. Kroger Co.
, 302 Ark. 86, 787 S.W.2d 669 (1990) (law firm disqualified where adverse parties contacted members of the firm on the same day, even though no confidential information was obtained and contacts were isolated). The appearance-of-impropriety test fails to adequately consider the interplay between the subject matter of former and subsequent representation. Annotated Model Rules of Professional Conduct R. 1.9, at 165 (2d ed. 1992). In deciding whether a substantial relationship exists between two representations, a careful examination of the factual context of the subject matters of both representations is necessary in order to determine whether disqualification is required. See 
Hannan v. Watt
, 147 Ill. App. 3d 456, 464 (1986). We further conclude that the three-part inquiry set forth in 
La Salle
 provides the most practical framework for conducting a realistic comparison of the subject matters. See also 
Herbes v. Graham
, 180 Ill. App. 3d 692 (1989).

At trial, both parties presented evidence regarding the nature and scope of the Gehlbach firm's involvement with Cortelloni's guardianship case number 275. Cortelloni testified that John Gehlbach escorted her to the sheriff's office in 1956 so that she could be served with papers. She also offered into evidence a 1963 inventory listing her interest in Lawndale 160 and a 1963 receipt for services rendered as evidence that confidential information was available to the firm. Finally, the record shows that the Gehlbach firm did not formally withdraw from guardianship case number 275 following its 1956 appearance.

In contrast, Schwartz presented evidence that the Gehlbach firm's involvement in the guardianship case was limited in duration and scope. John Gehlbach testified that his firm represented the James Edward Malerich estate in proceedings which were separate from and unrelated to guardianship case number 275. He stated that his firm appeared in case number 275 for the limited purpose of selling real estate previously owned by James Edward Malerich in which Cortelloni had a one-sixth interest. He testified that his representation of the Malerich family ended completely in 1957 when the James Edward Malerich estate was closed. He also testified that he had no knowledge of the 1963 inventory which listed Cortelloni's interest in Lawndale 160. It is undisputed that the Gehlbach firm did not file the 1963 amended inventory. Finally, Gehlbach testified that attorneys other than the Gehlbachs handled the guardianship proceedings for Katherine Malerich in case number 275.

Contrary to Cortelloni's contention, the Gehlbach firm's appearance in connection with the 1956 petition for the sale of unrelated real estate does not invite an inference that the firm necessarily obtained confidential information about Lawndale 160 which would be relevant to the present litigation. It is undisputed that the property which was the subject of the petition filed by the Gehlbach firm was totally unrelated to Lawndale 160. Nothing in the record suggests that the Gehlbach firm had an obligation to learn about all of Cortelloni's property interests when the firm appeared in case number 275 in 1956.

We believe that the court's decision in 
First National Bank v. St. Charles National Bank
, 152 Ill. App. 3d 923 (1987), provides guidance for the manner in which this court should view the trial court's decision to deny Cortelloni's motion to disqualify. In 
First National
, the court held that no substantial relationship existed between a law firm's representation of a plaintiff/mortgagor in a foreclosure action and the firm's former representation of the defendant/mortgagee in unrelated matters five years prior to the litigation. Counsel for the plaintiff had represented the defendant and her deceased husband with respect to the purchase of their business, the annual preparation of corporate documents, the maintenance of their corporate books, the possibility of a misrepresentation suit against certain sellers and the negotiation of leases on their business property. The defendant sought disqualification of plaintiff's counsel on the grounds that a conflict of interest existed because counsel had obtained confidential information regarding her assets during the former representation. The trial court denied the motion to disqualify.

On appeal, the court in 
First National
 acknowledged that the evidence showed that plaintiff's counsel received information regarding the defendant's assets during the former representation. However, the court also determined that the record showed that plaintiff's counsel had not represented the defendant or her husband in “any significant matter” for over five years. The court noted that the former representation did not concern transactions which were the subject of the dispute before the court. Finally, the court determined that any information provided to plaintiff's counsel during its former representation of the defendant was either outdated or superseded by subsequent documentation. The court in 
First National
 held that the trial court did not abuse its discretion in denying the motion to disqualify.

Similarly, the record in the case at bar is devoid of evidence that the Gehlbach firm represented Cortelloni in any significant matter in nearly 40 years. The subject matter of the 1956 transaction involving the Gehlbach firm had no relationship to Lawndale 160 or other confidential information which would be relevant to the instant litigation. Furthermore, the 1963 amended inventory which listed Cortelloni's remainder interest in Lawndale 160 does not constitute confidential information because it became a public record when it was filed in case number 275. See 134 Ill. 2d R. 1.9(a)(2)(B); see also 
People v. Brown
, 275 Ill. App. 3d 1105, 1110 (1995) (confidentiality is wanting where the client intends for matters communicated to an attorney to be made public). We also note that the Gehlbach law firm did not file the amended inventory.

For these reasons, we conclude that Cortelloni failed to meet her burden of showing a substantial relationship between the matters involved in the two representations for purposes of Rule 1.9. We hold that evidence contained in the record supports the trial court's denial of Cortelloni's motion to disqualify Schwartz's counsel, and that the trial court therefore did not abuse its discretion. The evidence contained in the record adequately establishes that the scope of the Gehlbach firm's former representation of Cortelloni was limited to the 1956 sale of real estate and did not entail the disclosure of confidential information relevant to the present litigation. A comparison of the subject matters of the two representations coupled with the considerable passage of time between them does not support the appellate court's finding that the matters are substantially related. We agree with Schwartz that the appellate court applied an inappropriate standard of review in this case. Thus, the appellate court erred in concluding that the circuit court abused its discretion when it denied Cortelloni's motion to disqualify.

We note that Cortelloni also charges the Gehlbach firm with soliciting Schwartz's business. However, at oral argument Cortelloni conceded that she does not have standing to raise this issue. We agree, and therefore decline comment on this issue.

In summary, we reverse the appellate court's holding that the circuit court abused its discretion in denying Cortelloni's motion to disqualify. We further hold that the dismissal of Schwartz's cause of action by the appellate court was wholly inappropriate and unauthorized by law. In support of its sanction, the appellate court cited 
First Bank v. Carswell
, 111 Ill. App. 3d 71, 73 (1982), in which the court held that a client was bound by his former attorney's failure to appear in order to prevent a default judgment. However, 
Carswell
 does not suggest or hold that an attorney's alleged ethical violation should result in the dismissal of his or her client's case. Nothing in 
Carswell
 or the Illinois Rules authorized the appellate court to sanction Schwartz for an alleged ethical violation by her attorney. We therefore reverse the order of the appellate court dismissing Schwartz's cause of action with prejudice.

 Finally, Cortelloni raises the following issues: (1) whether under a devise to the testator's niece's “blood lineal descendants,” the niece's illegitimate daughter (Schwartz) could take under the will, (2) whether Schwartz, as a child of her adoptive parents, may inherit property from her biological mother and (3) whether allowing a child to inherit from both its adoptive parents and its biological parents denies unadopted children equal protection of the law. Since the appellate court determined that Schwartz's counsel should have been disqualified and dismissed the case as a sanction, it did not address these issues. As such, these issues raised by Cortelloni are not properly before us. 
Boatmen's National Bank v. Direct Lines, Inc.
, 167 Ill. 2d 88 (1995); 
Christopher v. West
, 409 Ill. 131, 135 (1951).

We therefore reverse the judgment of the appellate court and remand this cause to the appellate court for consideration and resolution of the remaining issues.

Appellate court reversed;

cause remanded
.

FOOTNOTES
1:
The record shows that the trial court issued a preliminary ruling denying Cortelloni's motion to disqualify without an evidentiary hearing. At trial, the court permitted Cortelloni to develop her so-called “affirmative defense” that a conflict of interest barred the Gehlbach firm's representation of Schwartz. Because the trial court allowed evidence on the conflict of interest issue, we consider the trial court as having taken the issue of disqualification with the case.