SIXTH DIVISION
September 28, 2007

No. 1-07-0441

| | | |
|---|---|---|
| PEDERSEN AND HOUPT, P.C., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois, |
| | ) | County Department, |
| v. | ) | Law Division. |
| | ) | |
| SUMMIT REAL ESTATE GROUP, LLC, | ) | |
| SUMMIT DEVELOPMENT GROUP, LLC, | ) | No. 06 L 8078 |
| MAIN STREET VILLAGE WEST-PART 1, | ) | |
| LLC, TIMOTHY TYNAN, TYNAN, LLC, | ) | |
| DARRYL SCHULTE, JR., and SCHULTE, LLC, | ) | Honorable |
| | ) | Bill Taylor, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

Plaintiff-appellant Pedersen & Houpt, P.C. (P&H), a law firm, brings this interlocutory appeal pursuant to Illinois Supreme Court Rule 306(a)(7)[1] from the trial court's order disqualifying it from representing itself in a lawsuit against its former clients for unpaid attorney fees and costs. For the reasons that follow, we reverse the trial court's order.

I. BACKGROUND

On August 1, 2006, P&H filed a complaint for recovery of legal fees owed by the defendants for legal services performed on their behalf. The defendants named in the complaint are Summit Real Estate Group, LLC (Summit RE); Summit Development Group, LLC (Summit

---

[1] Permitting a party to seek leave to appeal "from an order of the circuit court granting a motion to disqualify the attorney for any party." 210 Ill. 2d R. 306(a)(7).

Development); Main Street Village West-Part 1 (Main Street West); Timothy Tynan (Tynan); Tynan, LLC; Darryl Schulte, Jr. (Schulte); and Schulte, LLC. The underlying facts pertaining to each of the counts, as alleged in the complaint, are as follows.

P&H is an Illinois corporation registered to practice law in the State of Illinois, while Summit RE, Summit Development, Tynan, LLC, and Schulte, LLC, are Illinois limited liability corporations. The members of Summit Development are Tynan, Schulte, and four other individuals not party to this lawsuit. The members of Summit RE are Tynan, LLC (whose only member is Tynan), and Schulte, LLC (whose only member is Schulte). The members of Main Street West are Tynan, LLC, Schulte, LLC, and JP Commercial Investments, LLC; the former two parties collectively own a 50% share in the company.

All of the defendants are real estate developers in the business of purchasing, developing, selling, and/or leasing Illinois property. Both Summit Development and Summit RE were involved in developing a parcel of land located in Orland Park, Illinois, and they retained P&H to provide a variety of corporate and real estate legal services in connection with this enterprise from 2003–04 onward. Furthermore, P&H represented Summit RE in a breach of contract lawsuit in which Summit RE was seeking to enforce an agreement it had made to purchase 12 acres of Orland Park property. Main Street West also hired P&H for what P&H terms "LLC Maintenance." P&H states that it completed all services it was requested to perform by these companies.

The complaint further alleges that, due to the aforementioned litigation services provided by P&H, Summit RE won specific performance of the land sale contract. As a result, it was able to purchase three acres of the Orland Park property on August 22, 2005, and the remaining nine

acres on January 25, 2006. As soon as it acquired the property, Summit RE immediately transferred it to Main Street West "for no or inadequate consideration"; as this was its only asset, the company had no further means of paying creditors, including P&H. Summit RE later dissolved on August 28, 2006. Summit Development also dissolved after distributing all its assets to its members.

P&H avers in its complaint that on January 17, 2006, before the Orland Park property had been transferred to Main Street West, P&H had asserted an attorney's lien on the property pursuant to the Attorneys Lien Act (770 ILCS 5/1 (West 2006)) to cover payment of the fees that Summit RE had incurred as a result of P&H's litigation services. The complaint further avers that sometime before January 25, 2006, defendants orally promised to pay all outstanding legal fees that Summit RE owed to P&H; that they also promised that Tynan, Tynan, LLC, Schulte, and Schulte, LLC, would pledge a 50% share in Main Street West to P&H in order to secure payment; that P&H relied on these promises, to its detriment, by not enforcing its attorney's lien on the Orland Park property or preventing the conveyance of the property to Main Street West; but that these promises were never kept. As a result, once Summit RE dissolved, P&H still had not been compensated for the legal services it provided to Summit RE, and despite repeated demands, it was unable to obtain payment of fees, for which purpose it filed the instant suit for recovery.

In counts I through XXXIII, P&H asserts multiple claims for breach of contract, *quantum meruit*, and account stated against Summit RE, Summit Development, Main Street West, and

No. 1-07-0441

Tynan for the legal fees incurred during P&H's representation of the companies.[2] In count XXXV, P&H then seeks to pierce the corporate veil of Summit RE to hold Tynan, LLC, and Schulte, LLC, liable for the legal debts that Summit RE has accrued to P&H. In support of this claim, P&H alleges that Summit RE is a "mere facade of Tynan LLC and Schulte LLC" and that there is "unity of interest and ownership" between the three parties. Similarly, in counts XXXVI and XXXVII, P&H seeks to pierce the corporate veils of Tynan, LLC, and Schulte, LLC, to hold Tynan and Schulte, respectively, responsible for the legal indebtedness of their companies, which it also alleges are "mere facade[s]." In count XXXIV, it seeks to pierce the corporate veil of Summit Development to hold Tynan and Schulte personally liable for outstanding attorney's fees incurred by Summit Development.

P&H also seeks to enforce the attorney's lien it allegedly placed on the Orland Park property in the amount of its outstanding attorney fees against Summit RE and Main Street West in count XXXIX. Their theory for liability against Main Street West is that the company took the property subject to the lien, with full knowledge of it.

In addition, P&H claims recovery of its legal fees under a theory of unjust enrichment (count XL) and successor liability (count XXXVIII) against Main Street West. P&H avers that Main Street West only acquired the property because of P&H's representation of Summit RE and would therefore be unjustly enriched if it was allowed to keep it without having to pay the attorney's fees incurred by Summit RE. Moreover, Main Street West assumed Summit RE's

---

[2] Tynan is included here because P&H alleges that Tynan personally hired P&H to represent Summit RE and promised that the legal fees incurred would be paid.

-4-

liability to P&H, since the transfer of the Orland Park property was "intended to fraudulently escape liability to its creditors, including P&H." On a similar note, P&H is also pursuing a claim of fraudulent conveyance (count XLI) against Summit RE and Main Street West, alleging that Summit RE transferred the Orland Park property to Main Street West "with the intent to delay, hinder, or defraud its creditors" in violation of the Uniform Fraudulent Transfer Act (740 ILCS 160/1 et seq. (West 2006)).

Finally, P&H seeks recovery of its legal fees on theories of promissory estoppel (count XLII) and fraudulent misrepresentation (count XLIV) against all defendants except Summit Development, based on defendants' alleged false promises to pay. Pursuant to those alleged promises, in count XLIII, P&H also seeks an equitable lien against the 50% share that Tynan, LLC, and Schulte, LLC, have in Main Street West, for the amount of legal fees owed to P&H by Summit RE.

In response to P&H's complaint, defendants (except for Main Street West) moved to have P&H disqualified from representing itself on grounds that it might improperly use client confidences in violation of Rule 1.6 of the Illinois Supreme Court Rules of Professional Conduct (210 Ill. 2d R. 1.6(a)). Defendants pointed out that P&H had received a wealth of confidential information in the course of its representation of Summit Development and Summit RE that might prove material to the instant lawsuit. P&H opposed the motion, arguing that it was allowed under Rule 1.6(c)(3) to use confidential client information in a lawsuit to collect fees, and that all of its claims were indeed related to fee collection. Defendants conceded that under the provisions of Rule 1.6(c)(3), P&H could utilize such information in pursuit of its claims for breach of contract,

*quantum meruit*, and account stated; however, they argued that P&H's other alleged causes of action were an attempt to create new liabilities beyond the scope of its contractual relationship with its clients, so use of client confidences to prove those claims was not permitted under the Rules of Professional Conduct.

After hearing the oral arguments of counsel, the trial court granted the defendants' motion and ordered P&H to find new counsel. It is from that order that P&H files this appeal.

## II. ANALYSIS

A trial court's decision to disqualify counsel will not be overturned on appeal absent an abuse of discretion, which is defined as a ruling that no reasonable person would agree with. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 176, 685 N.E.2d 871, 876 (1997); *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.,* 116 Ill. App. 3d 1043, 1053, 452 N.E.2d 804, 812 (1983). In assessing the decision of the court below, we are mindful that attorney disqualification is generally considered a drastic measure, because it bars a party from retaining the counsel of its choice and thus destroys the attorney-client relationship. *Schwartz*, 177 Ill.2d at 178, 685 N.E.2d at 877; *SK Handtool Corp. v. Dresser Industries, Inc.*, 246 Ill.App.3d 979, 989, 619 N.E.2d 1282, 1289 (1st Dist. 1993). Courts are therefore cautious about granting motions to disqualify, lest they be used tactically as means of harassment. *Schwartz*, 177 Ill. 2d at 178, 685 N.E.2d at 877; *SK Handtool Corp.*, 246 Ill. App. 3d at 989, 999, 619 N.E.2d at 1288–89, 1295 (noting that a party who attempts to use disqualification motions as a harassment tool may be subject to sanctions). This concern must be balanced against the need to enforce the canons of legal ethics, which are designed to protect the attorney-client relationship and maintain public

confidence in the integrity of the legal profession and the administration of justice. *SK Handtool Corp.*, 246 Ill. App. 3d at 989, 619 N.E.2d at 1289.

Defendants' motion seeking disqualification of P&H as counsel in representing itself in this proceeding was predicated upon Rule 1.6(a) (210 Ill. 2d R. 1.6(a)), and it was on the basis of this canon that the trial court entered its order of disqualification. Rule 1.6(a) provides the general rule that "a lawyer shall not, during or after termination of the professional relationship with the client, use or reveal a confidence or secret of the client known to the lawyer unless the client consents after disclosure." 210 Ill. 2d R. 1.6(a). P&H, on the other hand, contends that this case is controlled by the exception contained in Rule 1.6(c), which states in relevant part, "A lawyer may use or reveal *** (3) confidences or secrets necessary to establish or collect the lawyer's fee." 210 Ill. 2d R. 1.6(c)(3). P&H also contends that its right to proceed as its own counsel in this suit is protected by implication under Rule 3.7(a), which provides:

"A lawyer shall not accept or continue employment in contemplated or pending litigation if the lawyer knows or reasonably should know that the lawyer may be called as a witness on behalf of the client, except that the lawyer may undertake the employment and may testify:

*** 

(3) if the testimony will relate to the nature and value of legal services rendered in the case by the lawyer or the firm to the client[.]" 134 Ill. 2d R. 3.7(a)(3).

It is the scope of these exceptions, as applied to the allegations in P&H's complaint, that is in

dispute between the parties here.[3] The parties agree that P&H acquired confidential information during the course of its representation of Summit RE and Summit Development. Defendants,

_____

[3] We note that the central question involving the operative scope of the exception under Rule 1.6(c)(3) is not the extent to which a lawyer may act as counsel on his own behalf in pursuing a claim for legal fees, but rather is the right of a lawyer to pursue his legal fees, whether he represents himself or retains outside counsel to do so on his behalf. Even if an attorney retained outside counsel to pursue his claim for legal fees, he would still possess the same confidential information gleaned through his relationship with his former clients, which he could then impart to any such outside counsel. Thus, the true question to be resolved is the extent to which an attorney can utilize client confidences, whether acting on behalf of himself or through outside counsel whom he chooses to retain for that purpose.

Arguably, therefore, disqualification of the right of an attorney to act as his own counsel in the pursuit of legal fees would be inappropriate, since it would not resolve the question of the extent to which he might utilize the confidences of his client to which he would still be privy if he were only the plaintiff and someone else was hired to represent him. Thus, the distinction between himself as a party and himself as an attorney is only a mere formalism leading to no substantive distinction. We need not, however, here resolve the question whether Rule 1.6 should lead to disqualification of a lawyer representing himself in suing his client, because we have determined, as shall be fully set forth in the ensuing text, that the entire lawsuit brought by P&H properly falls under the exception in Rule 1.6(c)(3) and consequently may be maintained by P&H whether as a party alone or as both party and counsel on its own behalf.

however, contend that the exceptions to confidentiality of client information in Rule 1.6(c)(3) and by implication in Rule 3.7(a)(3) only apply to P&H's breach of contract, *quantum meruit*, and account stated claims, which seek simple collection of fees due and owing. P&H, on the other hand, urges that all of its alleged causes of action fall under the broad language of Rule 1.6(c)(3).

In weighing the contentions of the parties, we do not interpret the meaning and scope of Rule 1.6(c)(3) in a vacuum; rather, we look to the purpose behind the exception. P&H argues that an overly narrow reading would be fundamentally unfair, since it would adversely affect lawyers' abilities to collect fees by depriving them of crucial evidence. Indeed, concerns about fairness to attorneys with meritorious claims against clients feature prominently in courts' interpretation of the confidentiality requirements of the rules of legal ethics. Thus, our courts have said that lawyers may use client confidences in litigation "where such a disclosure becomes necessary for the protection and preservation of the attorney's own rights inter se." *Sokol v. Mortimer*, 81 Ill. App. 2d 55, 65, 225 N.E.2d 496, 501 (1967). Confidentiality is not intended to be used as a sword by clients in such situations.

With these considerations in mind, we move to examine the particular causes of action that defendants claim fall outside the scope of Rule 1.6(c)(3). Defendants contend, with extended discussion, that the words "establish" and "collect" as deployed in Rule 1.6(c)(3) (210 Ill. 2d R. 1.6(c)(3)) should be construed narrowly to apply only to claims designed "to fix or prove the amount of fees owed [and] obtain payment of that sum." They extrapolate this definition in an attempt to limit the exception to collection actions predicated on breach of contract, *quantum meruit*, and account stated. Any other actions, they assert, are "entirely new theor[ies] of liability

against new parties" in which confidentiality requirements still apply with full force.

P&H urges us to look beyond the labels given to its various causes of action to see the substance behind its legal theories: namely, that the defendants have deliberately taken steps to avoid liability to P&H for the legal services that it has rendered to them, and P&H has employed these multiple causes of action to countermand defendants' alleged efforts to evade payment of their indebtedness to their attorneys for legal fees. If attorneys' rights under Rule 1.6(c)(3) to breach client confidentiality were limited only to simple actions for breach of contract, *quantum meruit*, or account stated, they would have no recourse to recover fees in cases where clients employed fraudulent transfers and conveyances or other devices to divest themselves of their assets. According to the allegations that P&H makes in its complaint, it would be unable to collect its fees merely by asserting claims for breach of contract, *quantum meruit*, and account stated against the parties it directly contracted with, since the real parties in interest – the ghosts inside the machine, as it were – have moved their assets away from those original companies. Rather, in order to actually "obtain payment of that sum" instead of winning a meaningless judgment against the dissolved and asset-less Summit Development and Summit RE, P&H is required to use additional legal theories to pursue its remedies. To require disqualification in such situations would be unnecessary and would unfairly restrict and obstruct the retrieval of fees from unscrupulous clients. Indeed, it would reward the kind of fraudulent conduct that P&H alleges Tynan and Schulte engaged in. Such use of other legal theories still fits within the definition of the phrase "to establish or collect," so long as the use of these theories is deployed solely for the purpose of retrieving fees and costs, not to establish other items of damage.

The monetary values sought by P&H in the various claims also support the conclusion that P&H is not going beyond fee collection in the disputed claims. The sum total of the breach of contract claims against Summit RE, Main Street West, and Tynan is $305,467.61; this is also the exact amount that P&H seeks against defendants in each of counts XXXV through XXXVIII and XL through XLIV of the complaint. As for the other causes of action that are disputed by defendants, the amount sought in count XXXIV – where P&H is seeking to pierce the corporate veil of Summit Development to hold Tynan, LLC, and Schulte, LLC, liable for its debts – is exactly the same as the amount of P&H's breach of contract claim against Summit Development. And finally, count XXXIX deals with the attorney's lien that P&H placed upon the Orland Park property when it was owned by Summit RE, and it is this same lien that P&H is trying to enforce against Main Street West. These synchronized dollar amounts demonstrate that P&H is not using counts XXXIV through XLIV to expand liability beyond that which it alleges in its breach of contract, *quantum meruit*, and account stated claims; rather, it is using these later claims as alternative means of recovering the same amount.

Thus, each of the counts in the complaint seeks only to recover legal fees, under whatever theory is effective to implement their recovery, and is therefore well within the scope and latitude of Rule 1.6(c)(3). Consequently, we must conclude that the trial court abused its discretion in disqualifying these attorneys from representing themselves in pursuing this action for fee recovery explicitly authorized under the rules of legal ethics.

Order reversed and case remanded for proceedings not inconsistent with this opinion.

McBRIDE, P.J., and O'MALLEY, J., concur.