Second Division
January 24, 2006

No. 1-04-3512

| In re ESTATE OF Lois E. KLEHM, | ) | Appeal from the |
| Deceased (Kathleen Klehm-Marinangel, | ) | Circuit Court of |
| Executor of the Estate of | ) | Cook County |
| Lois E. Klehm, Petitioner-Appellant, | ) | |
| v. Arnold J. Klehm, Roy G. Klehm, and | ) | No. 99 P 119 |
| Susan Klehm, individually and as | ) | |
| Executor of the Estate of | ) | Honorable |
| Carl H. Klehm, Respondents-Appellees). | ) | James W. Kennedy |
| | ) | Judge Presiding. |

JUSTICE HALL delivered the opinion of the court:

The central issue for review is whether the trial court abused its discretion in granting a motion disqualifying attorneys Frederick C. Cappetta (Cappetta) and Ronald E. Shadle (Shadle) and their respective law firms from further representing executor Kathleen Klehm-Marinangel in a citation proceeding she initiated against certain family members and their business entities for the purpose of discovering information and recovering monies and assets allegedly belonging to the estate of her deceased mother, Lois E. Klehm.

Kathleen petitioned this court for review pursuant to Supreme Court Rule 306(a)(7) (166 Ill. 2d R. 306(a)(7)). For the reasons that follow, we find that the trial court abused its discretion in this case and therefore we reverse.

While the parties disagree regarding certain specific facts, those that follow are uncontroverted. Lois E. Klehm (Mrs. Klehm) died testate on December 8, 1998. In addition to a number of grandchildren, she was survived by three adult children, Roy G.

Klehm, Arnold J. Klehm, and Kathleen Klehm-Marinangel; another son, Carl H. Klehm (Chuck), predeceased her and was survived by his wife Susan Klehm, who is a party to these proceedings.

In January 1999, Kathleen filed a petition to probate her mother's last will and for letters testamentary. The will was drafted by attorneys from the law firm of Sidley & Austin. At the time she filed the petition, Kathleen was represented by the law firm of Cappetta & Shadle, Ltd. On February 4, 1999, the circuit court entered an order admitting the will to probate and appointing Kathleen as executor of her mother's estate.

Mrs. Klehm's will had nominated Roy, Arnold, and Kathleen as coexecutors. The sons, however, declined to act as coexecutors under the will and in August 1999, filed a petition contesting the will based on undue influence.

From January 1999 through 2003, Cappetta and Shadle represented Kathleen in the will contest and in numerous out-of-court negotiations concerning the estate's claims against the sons and their business entities. On August 15, 2003, after negotiations stalled, Kathleen filed a three-count citation petition against Roy, Susan (individually and as administrator of Chuck's estate), Arnold, and their business entities (collectively Klehm movants), for the purpose of discovering and recovering monies and assets allegedly belonging to the estate.

On September 30, 2003, the Klehm movants filed a motion to disqualify Cappetta and Shadle from representing Kathleen in the

1-04-3512

citation proceedings or, in the alternative, in any estate proceedings other than the will contest.  The Klehm movants contended that Cappetta and Shadle had previously represented them in various transactions at issue in the pending citation proceedings and therefore the attorneys' representation of Kathleen in her capacity as executor of their mother's estate violated Rule 1.9 of the Rules of Professional Conduct[1] because

[1] Rule 1.9 of the Code of Professional Responsibility provides, in pertinent part:

"Conflict of Interest: Former Client

(a) A lawyer who has formerly represented a client in a matter shall not thereafter:

(1) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of

1-04-3512

it constituted involvement in litigation adverse to a former client's interest in a matter substantially related to the former representation.

The Klehm movants also filed a motion requesting the trial court to strike the citation petition on the grounds that: all requested documents and information had already been provided and therefore the citation was moot; the petition was not a proper petition for citation to discover assets because it did not actually seek issuance of a citation but rather attacked the validity of the transfers themselves; and the petition was unsupported by either current law or facts and was therefore sanctionable.

On November 4, 2004, following five days of hearings, the trial court entered an order disqualifying Cappetta and Shadle from further representing Kathleen in the citation proceedings, but not as to any other supplemental proceedings in the estate. Kathleen filed a timely petition for leave to appeal the order on

the former client, unless the former client consents after disclosure[.]" 134 Ill. 2d R. 1.9.

1-04-3512

December 6, 2004. On February 3, 2005, the trial court granted Kathleen's petition for leave to appeal.

ANALYSIS

I. Waiver of Right to Seek Disqualification of Counsel

Kathleen first contends that the trial court abused its discretion by failing to find that the Klehm movants waived their right to seek disqualification of attorneys Cappetta and Shadle and their respective law firms, where the movants waited approximately four years before raising the issue. We agree.

Courts have vital interests in "protecting the attorney-client relationship, maintaining public confidence in the legal profession and ensuring the integrity of judicial proceedings." *S K Handtool Corp. v. Dresser Industries, Inc.*, 246 Ill. App. 3d 979, 989, 619 N.E.2d 1282 (1993). To protect these vital interests, courts have the authority to disqualify an attorney from representing a particular client. See, *e.g.*, *LaSalle National Bank v. Triumvera Homeowners Ass'n*, 109 Ill. App. 3d 654, 664, 440 N.E.2d 1073 (1982) (rationale for disqualification "is to enforce the attorney's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information").

At the same time, however, it is well settled that since disqualification serves to destroy the attorney-client relationship by preventing a party from freely retaining counsel of his choice, it is regarded as a drastic measure that courts

1-04-3512

should apply only when absolutely necessary. *S K Handtool Corp.*, 246 Ill. App. 3d at 989; *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 178, 685 N.E.2d 871 (1997). In addition, motions to disqualify are generally viewed with caution since they can be used as a tool to harass opposing counsel. *Chemical Waste Management, Inc. v. Sims*, 875 F. Supp. 501, 505 (N.D. Ill. 1995).

In an effort to discourage tactical gamesmanship, courts have determined that motions to "disqualify should be made with reasonable promptness after a party discovers the facts which [led] to the motion." *Kafka v. Truck Insurance Exchange*, 19 F.3d 383, 386 (7th Cir. 1994), quoting *Central Milk Producers Cooperative v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir. 1978). Consequently, waiver is a valid basis for denying a motion to disqualify. See, *e.g.*, *International Insurance Co. v. City of Chicago Heights*, 268 Ill. App. 3d 289, 302-03, 643 N.E.2d 1305 (1994) ("[a] party waives any objection to an alleged attorney conflict of interest if it fails to assert that conflict promptly").

In determining whether a moving party has waived its right to object to an attorney's representation of an adverse party on conflict of interest grounds in civil cases, courts have considered such factors as the length of the delay in bringing the motion to disqualify; when the movant learned of the conflict; whether the movant was represented by counsel during the delay; why the delay occurred; and whether disqualification

˘6˘

would result in prejudice to the nonmoving party. See *Chemical Waste Management, Inc.,* 875 F. Supp. at 505.

In this case, the record indicates that the Klehm movants and their counsel knew or should have known of a potential conflict and adverse representation since at least August 1999, when the sons declined to act as coexecutors under their mother's will and instead hired lawyers to contest the will.  The Klehm movants, contested, among other things, deletion of the "forgiveness of debt" provision that was contained in Mrs.

1-04-3512

Klehm's 1984 will[2] and reiterated in her 1994 will.

_____

[2] The forgiveness of debt provision contained in the 1984 will stated as follows:

"D. Forgiveness of Debt:

    1. all indebtedness of any kind and nature due to LEK [Lois  E. Klehm] from sons, KPI [Klehm Properties, Inc.], KBP [Klehm Boys' Partnership], CKSN [Charles Klehm & Son Nursery], or their other entities

    2. all indebtedness of any kind and nature due to

LEK from KKM [Kathleen Klehm-Marinangel]."

The forgiveness of debt provision contained in the 1994 will stated as follows:

"G. Forgiveness of Debt:

    1. 'I forgive all indebtedness of every kind and nature due me from my sons, Klehm Properties, Inc., Klehm Boys' Partnership, Klehm Nursery Development, Inc., and Charles Klehm & Son Nursery.'"

In the 1996 will, the "forgiveness of debt" provision was deleted, and the will that was admitted to probate in February 1999 contained section 5.2, which stated:

"Most of my estate consists of investments made in businesses conducted by my sons and loans made in connection with said businesses. Since these businesses are currently invested in real estate which may be difficult to liquidate, I direct my Executors to grant these businesses sufficient time to raise the cash necessary to meet the obligations to pay the bequests contained in Article 2, so that the value of such businesses will not be unduly sacrificed."

In light of the language contained in section 5.2 directing the executor to recover money/debt from business entities owned by the sons, and the fact that the "forgiveness of debt" provision was deleted from the 1996 will, the Klehm movants evidently realized that their interests were potentially adverse to the estate when they contested the will.

The Klehm movants placed themselves in a potentially conflicting position with the estate when they initiated adversarial proceedings contesting the will. Cappetta and Shadle's defense of the terms of the will resulted in a potentially adversarial relationship between the attorneys and the Klehm movants and their attorneys. See *Jewish Hospital of St. Louis, Missouri v. Boatmen's National Bank of Belleville*, 261 Ill. App. 3d 750, 763, 633 N.E.2d 1267 (1994) (noting that

defending the terms of the will often results in an adversarial relationship between the estate and a beneficiary of the estate); *In re Estate of Kirk*, 292 Ill. App. 3d 914, 919, 686 N.E.2d 1246 (1997) (same); *Neal v. Baker*, 194 Ill. App. 3d 485, 488, 551 N.E.2d 704 (1990) (adversarial relationship resulted between attorney for the estate and income beneficiary where beneficiary contested attorney's contention that she, rather than the estate, should pay inheritance tax).

The Klehm movants and their attorneys knew or should have known of the potential conflict and adverse representation at the time they filed their will contest in August 1999. Nonetheless, they permitted the probate case to proceed for approximately four years before filing their motion to disqualify Cappetta and Shadle on September 30, 2003. Courts have denied motions to disqualify brought after comparable and even shorter periods of delay. See, *e.g., Tanner v. Board of Trustees*, 121 Ill. App. 3d 139, 146-47, 459 N.E.2d 324 (1984) (nine months); *First National Bank of Elgin v. St. Charles National Bank*, 152 Ill. App. 3d 923, 932-33, 504 N.E.2d 1257 (1987) (16 months); *Roth v. Roth*, 84 Ill. App. 3d 240, 244-45, 405 N.E.2d 851 (1980) (two years); *In re Estate of Kirk*, 292 Ill. App. 3d at 922 (3.5 years).

The Klehm movants maintain that the conflict did not arise until August 15, 2003, when Kathleen filed her citation petition. The Klehm movants contend that it was only when Kathleen filed the citation petition that they became aware that certain

transactions were being challenged and that their interests were
adverse to the estate.  The evidence does not support the Klehm
movants' argument.

As previously discussed, the Klehm movants and their
attorneys knew or should have known of the potential conflict and
adverse representation when they filed their will contest in
August 1999.  Contrary to the Klehm movants' contention, the
potential conflict did not arise on the date the citation
petition was filed.  Rather, the potential conflict and adverse
representation arose when the sons declined to act as coexecutors
under their mother's will and immediately hired lawyers to
contest the will and strike the citation petition.

It is noteworthy that the Klehm movants were represented by
counsel during the entire four-year delay.  Moreover,
disqualifying Cappetta and Shadle at this stage of the
proceedings would unfairly prejudice the estate because it would
deprive the estate of lawyers with substantial knowledge of the
proceedings and require substitute counsel to perform work that
most likely would duplicate the work already performed by
Cappetta and Shadle.

## II. Substantial Relationship

Even if the Klehm movants had not waived their right to seek
disqualification of attorneys Cappetta and Shadle, the attorneys
still should not have been disqualified from representing
Kathleen in the citation proceedings, because the record shows

that the movants failed to meet their burden of establishing a "substantial relationship" between the attorneys' earlier representation of the movants and their subsequent representation of Kathleen.  Under Rule 1.9 of the Illinois Rules of Professional Conduct, an attorney's subsequent representation of a party with interests adverse to a former client is prohibited if the matters involved in the two representations are substantially related. *Schwartz*, 177 Ill. 2d at 177.  A party seeking disqualification of counsel under Rule 1.9 bears the burden of proving that the former and subsequent representations are substantially related. *Schwartz*, 177 Ill. 2d at 177-78.

A trial court's decision on whether to disqualify counsel will not be disturbed absent an abuse of discretion. *International Insurance Company*, 268 Ill. App. 3d at 302.  An abuse of discretion occurs where a trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view. *Agnew v. Shaw*, 355 Ill. App. 3d 981, 990, 823 N.E.2d 1046 (2005).  Moreover, in cases such as this one, where the question on appeal involves the resolution of factual issues, the trial court's determination will not be disturbed unless it is unsupported by the evidence. *Schwartz*, 177 Ill. 2d at 176.

A party seeking disqualification based on prior representation must establish the existence of a prior attorney-client relationship and then establish that the prior and

1-04-3512

subsequent representations are substantially related. *Gagliardo
v. Caffrey*, 344 Ill. App. 3d 219, 226, 800 N.E.2d 489 (2003).
Our supreme court adopted the three-part test set forth in
*LaSalle National Bank v. County of Lake*, 703 F.2d 252 (7th Cir.
1983), as a means of determining whether prior and subsequent
representations are substantially related. See *Schwartz*, 177 Ill.
2d at 180; *Hasco, Inc. v. Roche*, 299 Ill. App. 3d 118, 127, 700
N.E.2d 768 (1998).

Under the "substantial relationship" test, the court first
makes a factual reconstruction of the scope of the prior legal
representation; second, the court determines whether it is
reasonable to infer that the confidential information allegedly
given would have been given to a lawyer representing a client in
those matters; and third, the court determines whether the
information is relevant to issues raised in the pending
litigation against the former client. See *Schwartz*, 177 Ill. 2d
at 178; *Franzoni v. Hart Schaffner & Marx*, 312 Ill. App. 3d 394,
400, 726 N.E.2d 719 (2000).

If the court finds a substantial relationship between the
prior and subsequent representations, then the court is entitled
to assume that client confidences, relevant to the subsequent
litigation, were revealed during the course of the prior
representation. *LaSalle National Bank*, 703 F.2d at 256. The
primary concern under the substantial relationship test is
whether "'confidential information that might have been gained in

1-04-3512

the first representation [may be] used to the detriment of the former client in the subsequent action.'" *INA Underwriters Insurance Co. v. Nalibotsky*, 594 F. Supp. 1199, 1206 (E.D. Pa. 1984), quoting *Realco Services, Inc. v. Holt*, 479 F. Supp. 867, 871 (E.D. Pa. 1979).

In answering the first question regarding the scope of the prior representation, the court should focus on the reasons why counsel was retained and the tasks which counsel was employed to perform. *INA Underwriters Insurance Co.*, 594 F. Supp. at 1206. "Once the purposes for which the attorney was employed are clear, it is then possible to consider the type of information which a client would impart to an attorney performing such services for him." *INA Underwriters Insurance Co.*, 594 F. Supp. at 1206.

The Klehm movants contend that Cappetta's and Shadle's prior representation of the movants in various real estate and loan transactions in the 1970s constitutes grounds for disqualifying the two attorneys from representing Kathleen in the citation proceedings. The Klehm movants maintain that there is a substantial relationship between issues encompassed in the prior representation and those of the citation proceeding, because both representations concern the same transactions. The Klehm movants also contend that the attorneys' representation of the movants as beneficiaries of the estate of their father, Mr. Klehm, provides additional grounds for disqualifying the attorneys. We must reject the Klehm movants' contentions.

Cappetta's and Shadle's representation of the coexecutors of Mr. Klehm's estate does not constitute prior representation of the Klehm movants justifying disqualification of the attorneys under the rules of professional conduct, because under the facts in this case, such representation did not create an attorney-client relationship between the movants and the attorneys. See *Jewish Hospital of St. Louis, Missouri*, 261 Ill. App. 3d at 763 ("[e]ven though beneficiaries of a decedent's estate are intended to benefit from the estate, an attorney for an estate cannot be held to a duty to a beneficiary of an estate, due to the potentially adversarial relationship between the estate's interest in administering the estate and the interests of the beneficiaries of the estate"). Without an attorney-client relationship, there is no basis for disqualification under the rules of professional conduct. See *Schwartz*, 177 Ill. 2d at 174.

In regard to a factual reconstruction of the nature and scope of Cappetta's and Shadle's prior legal representation of the Klehm movants, the record shows the following. Cappetta represented the Klehm sons (Roy, Arnold, and Chuck) from 1972 to 1975, performing such services as representing Roy and his wife Sara in preparing their estate planning documents; creating the Klehm Boys Partnership (Roy, Arnold, and Chuck) and the Klehm Children's Partnership (Roy, Arnold, Chuck, and Kathleen) for the purpose of holding title to certain real estate; representing Arnold in the purchase of two parcels of real estate;

representing Chuck in acquiring 16 parcels of real estate (Corridor purchases); representing Klehm family members in regard to Klehm Properties, Inc., and maintaining the corporate minute books for this business entity until sometime after 1975; and representing the Klehm family, their business entities, and the estate of Mr. Klehm in negotiating and closing the equitable loan transactions.

Mrs. Klehm terminated Cappetta's representation of her, individually, in March 1975, after which he no longer represented the Klehm family. Cappetta, however, continued to represent Mrs. Klehm and the Continental Illinois National Bank, as coexecutors of the estate of Mr. Klehm, until November 1981.

Shadle started working for Cappetta in 1974 as an unlicensed law clerk. After he received his license to practice law in 1976, Shadle joined Cappetta, and from 1976 to 1981, he served as attorney for the coexecutors of the estate of Mr. Klehm, participating in various real estate transactions.

The Klehm movants maintain that this evidence establishes the existence of a substantial relationship between Cappetta's and Shadle's prior representation of the movants and the attorneys' subsequent representation of Kathleen in the citation proceedings. We disagree.

The evidence establishes that the nature and scope of Cappetta's and Shadle's former representation of the Klehm movants in the various real estate and loan transactions does not

1-04-3512

entail disclosure of confidential information relevant to the citation proceedings. "The mere disclosure of confidential information to counsel in the course of the prior representation is not, itself, sufficient grounds for disqualification of that counsel when he later represents an adverse party. The confidential information must be of the type which one would expect to be related to the issues in the present litigation." *INA Underwriters Insurance Co.*, 594 F. Supp. at 1207.

Relevance is gauged by the violations alleged in the complaint and an assessment of the evidence useful in establishing those allegations. *Westinghouse Electric Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 226 (7th Cir. 1978). The complaint in this case is in the form of a three-count citation petition to discover and recover assets.

The purpose of a citation proceeding is to "obtain the return of personal property belonging to the estate but in the possession of or being concealed by others, or to obtain information needed to recover estate property." *Lombardi v. Lepkowicz*, 28 Ill. App. 3d 79, 81, 328 N.E.2d 328 (1975). In the instant case, any confidential information Cappetta and Shadle obtained during their representation of the Klehm movants in real estate and loan transactions in the 1970s has little relevance to the current citation proceeding.

Count I of the citation alleges as follows: the Klehm movants have information and knowledge concerning the existence,

ownership, and location of common stock of Klehm Properties, Inc. (KPI), belonging to the estate of Mrs. Klehm and withheld by the movants from the executor (Kathleen); the Klehm movants have in their possession or control evidence of title to stock belonging to the estate of Mrs. Klehm, which movants wrongfully refuse to deliver to the executor; corporate records and documents do not reflect certain stock transfers; and, since the alleged or claimed transfers were purportedly gifts, gift tax returns should have been filed regarding this stock.

Count II alleges that the Klehm movants and certain other family members have in their possession or control, or have converted, KPI stock belonging to the estate of Mrs. Klehm, which movants wrongfully refuse to deliver or account for the value thereof; and corporate records and documents do not reflect certain stock transfers.

The issues presented in counts I and II concern allegations of conversion of estate assets and whether purported transfers of KPI stock by Mrs. Klehm during the period of 1980 through 1995 constituted valid gifts or transfers. It is undisputed that neither Cappetta or Shadle nor their respective law firms represented Mrs. Klehm or the Klehm movants in connection with the purported transfers during this period.

The record shows that Shadle served as attorney for the coexecutors of the estate of Mr. Klehm and that he never directly represented the Klehm movants. Cappetta was fired in 1975, five

years before the transfers at issue occurred.  Consequently, any
confidential information Cappetta and Shadle obtained during
their representation of the Klehm movants in real estate and loan
transactions in the mid 1970s has little relevance in regard to
allegations concerning the conversion of estate assets or the
validity of gifts made in 1980 through 1995. See, *e.g., Moniuszko
v. Moniuszko*, 238 Ill. App. 3d 523, 529, 606 N.E.2d 468 (1992)
("elements of a valid gift are donative intent, the donor's
parting with the exclusive dominion and control over the subject
of the gift, and delivery to the donee"); *IOS Capital, Inc. v.
Phoenix Printing, Inc.*, 348 Ill. App. 3d 366, 370, 808 N.E.2d 606
(2004) (party claiming conversion must establish a right to the
property, a right to immediate possession, wrongful control by
the defendant, and a demand for possession).

Count III alleges that a fiduciary relationship existed
between Mrs. Klehm and certain Klehm movants, and as a result of
an alleged breach of that fiduciary duty, asks for an accounting
and recovery of assets.  With respect to the issues raised in
count III, the record indicates that neither Cappetta or Shadle
nor their respective law firms represented the Klehm movants in
any actions that could result in a court finding that the movants
breached their fiduciary duty to Mrs. Klehm.  The prior
representation was not related to the commission or omission of
actions of the Klehm movants resulting in a breach of their
fiduciary duty to Mrs. Klehm during the 1980s and 1990s. See,

1-04-3512

e.g., *Neade v. Portes*, 193 Ill. 2d 433, 444, 739 N.E.2d 496 (2000) (to state a claim for breach of fiduciary duty, a party must establish that a duty exists, that the fiduciary duty was breached, and that such breach proximately caused the injury).

In conclusion, the evidence establishes that no substantial relationship existed between Cappetta's and Shadle's prior representation of the Klehm movants and the attorneys' subsequent representation of Kathleen in the citation proceedings. Moreover, even if the Klehm movants had established a substantial relationship between the prior and subsequent representations, Cappetta and Shadle still should not have been disqualified, because the movants waived their right to seek disqualification of the attorneys by waiting approximately four years before raising the issue.

Accordingly, for the reasons set forth above, we reverse the order of the circuit court of Cook County disqualifying attorneys Cappetta and Shadle from representing Kathleen in the citation proceedings.

Reversed.

WOLFSON and SOUTH, JJ., concur.