# Illinois Official Reports

## Appellate Court

---

### *In re Estate of M.L.*, 2018 IL App (3d) 170712

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF M.L. and G.L., Minors (Anthony Loader, Petitioner- Appellant, v. Debra Grossi, Respondent-Appellee). |
| District & No. | Third District<br>Docket No. 3-17-0712 |
| Filed | November 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Will County, Nos. 17-P-458, 17-P-528; the Hon. Jeffrey J. Allen, Judge, presiding. |
| Judgment | Disqualification order reversed; cause remanded. |
| Counsel on Appeal | Frederick C. Cappetta, of Cappetta & Associates, Ltd., of Oak Brook, and Kathryne Hayes and Adrian Vuckovich, of Collins Bargione & Vuckovich, of Chicago, for appellant.<br><br>Melissa J. Kuffel, of Mullyk Laho Law, of Glen Ellyn, for appellee. |
| Panel | JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.<br>Justices Schmidt and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1        In this discretionary interlocutory appeal from the grant of a motion to disqualify counsel in a guardianship matter, the petitioner maintains that the court erred in disqualifying his attorney based upon an alleged conflict with another party, his sister, who also filed a petition for guardianship over petitioner's children. The motion to disqualify was filed by the maternal grandparents of the children.

¶ 2                                                     BACKGROUND

¶ 3        Anthony Loader and Christina Schaade were the natural parents of two children: M.L., born September 20, 2011, and G.L., born July 31, 2014. Anthony and Christina were never married, but it was never in dispute that Anthony was the biological father of both children. Anthony executed a voluntary acknowledgement of paternity for each child at the time of birth. It is undisputed that Anthony and Christina had a tumultuous relationship, and they never lived together for any significant period of time. At all times, the children lived with Christina, although not under any formal custodial determination. Anthony's involvement in the care of the children varied over time, and he maintained some interest and contact with both children. Christina and the children did not have a permanent address but lived with different family members, both hers and Anthony's. It is undisputed that Anthony's parental rights were never relinquished or terminated and he was never the subject of an order of protection regarding Christina or the children.

¶ 4        On May 24, 2017, Christina died. At the time of her death, she and the children had been staying in the home of Robert and Debra Grossi. Debra was Christina's mother. Robert, Debra's second husband, was not Christina's father. While Christina and the children resided in the Grossi home, Christina enrolled the children in daycare and school using the Grossi address as her own. Christina took no formal steps to relinquish parental control or temporary guardianship over the children to Debra or Robert.

¶ 5        On May 25, 2017, Anthony appeared at the Grossi home and demanded that the children be turned over to him. Debra and Robert refused. On May 31, 2017, at Christina's funeral, Anthony's demand that his children be turned over to him was again refused. The next day, Anthony inquired of the State's Attorney's office regarding the possibility of charging Debra and Robert with interference with his parental rights. He was apparently informed that local authorities would not intervene. At this time, Anthony was also a defendant in a criminal matter pending in Cook County circuit court. As a result of the uncertainty surrounding the outcome of the criminal matter, Anthony chose not to take further steps to obtain the physical custody of his children.

¶ 6        On June 1, 2017, Anthony executed a standard form "Appointment of Short-term Guardian" appointing his sister, Stephanie Loader, as short-term guardian of the children pursuant to section 11-5.4 of the Probate Act of 1975 (Probate Act). 755 ILCS 5/11-5.4 (West 2016). On June 5, 2017, Stephanie filed a petition for appointment of guardian in the Will County circuit court, attaching a copy of the short-term guardianship appointment previously executed by Anthony. In a supporting affidavit filed with her petition, Stephanie stated that (1) she was pursuing guardianship in accordance with Anthony's expressed designation in the standard form appointment of short-term guardian; (2) the guardianship she was seeking would terminate, pursuant to the terms of Anthony's appointment, "on the date that Anthony

states in writing that he is willing and able to make and carry out day-to-day child care decisions concerning the children, but not more than 365 days after the effective date of the Short-term Guardianship"; and (3) guardianship was being sought as a result of the Grossis' refusal to comply with the children's father's wishes. Stephanie's petition was docketed as case No. 17-P-458 and placed on the probate docket of Judge Jeffrey Allen. Natalie Cappetta of the law firm of Cappetta and Associates represented Stephanie.

¶ 7     On June 2, 2017, Debra and Robert filed a petition for custody of the children, which was docketed as case No. 17-F-469 and placed on the domestic relations docket of Judge Elizabeth Dow. On June 5, 2017, Anthony filed a response seeking dismissal of the petition on jurisdictional grounds and on the theory that Debra and Robert lacked standing to seek custody of the children. Anthony was represented by Natalie Cappetta and Frederick Cappetta of Cappetta & Associates and Greg LaCost of the law firm of Rizzon & Diersen. On that date, Judge Dow, over Anthony's objection, entered a temporary order granting custody of the children to Debra and Robert, with visitation for Anthony supervised by Stephanie.

¶ 8     On June 23, 2017, Judge Dow granted Anthony's motion to dismiss the custody petition on jurisdictional grounds and dissolved the temporary custody order. Anthony requested the entry of an order finding that he was entitled to legal custody of the children based on his uncontested paternity of each child. The court refused the request, suggesting that Anthony would need to file his own custody petition to assert his parental rights. Anthony's counsel requested that the Grossis voluntarily turn over the children to Anthony and Stephanie. The Grossis refused.

¶ 9     On June 26, 2017, Anthony filed a petition for custody of the children, which was docketed as case No. 17-P-569. Natalie Cappetta and her firm represented Anthony in this action. The petition named Stephanie Loader as "Guardian and necessary party." In the verified petition, Anthony requested that he be recognized as the biological father of the children and that he be granted sole care, custody, control, and education of the minor children and that the Grossis be ordered to surrender the children to him "or Stephanie Loader, Guardian." Anthony served notice of hearing for the next available court date, which was August 10, 2017. The matter was placed on Judge Dow's domestic relations docket.

¶ 10    On the following day, June 27, 2017, Debra and Robert filed an "Emergency Petition for Guardianship" of each of the children, which was docketed as case No. 17-P-528 on Judge Allen's probate docket. Anthony and Stephanie received notice of hearing on the emergency petition. Cappetta entered her appearance on Anthony's behalf and contested the jurisdiction of the court. The court reserved ruling on Anthony's opposition, appointed a guardian *ad litem* for the children, granted temporary custody of the children to Debra Grossi and established visitation rights for Anthony. The court on its own motion consolidated Stephanie's guardianship petition (17-P-458) with the Grossis' emergency guardianship petition. Anthony's paternity petition (19-F-569) was not consolidated and remained pending on the domestic relations docket in Judge Dow's court.

¶ 11    On August 10, 2017, Anthony filed a petition to dismiss the Grossis' guardianship petition in case No. 17-P-528, in which he argued that the Grossis lacked standing to bring the petition. In the verified petition, Anthony stated that he was "willing and able to make and carry out day-to-day child care decisions concerning the minors." Anthony further verified that he would revoke his appointment of Stephanie as short-term guardian as his "short-term

unavailability has resolved." The clerk informed Anthony that a hearing on his motion could not be docketed before October.

¶ 12    Meanwhile, on August 11, 2017, Judge Dow entered a judgment in Anthony's paternity petition (17-F-569) finding that Anthony was the biological father of the two children. The judgment included both a finding of paternity regarding each child and an order granting Anthony custody of each child, with instructions for law enforcement to provide appropriate enforcement of the custody order.

¶ 13    On August 14, 2017, at a hearing in the probate case, the court-appointed guardian *ad litem* recommended that the children remain in the temporary custody of the Grossis pending a final determination to follow further review. Anthony's counsel argued in response that the appropriate resolution for the matter would be for the court to defer to Judge Dow's paternity order and dismiss the Grossis' guardianship petition. Judge Allen denied the request to dismiss the Grossis' guardianship petition, continued the Grossis' temporary custody of the children, and ordered the guardian *ad litem* to continue her investigation toward the issuance of a final report. The court required that both Anthony and Stephanie should be listed as authorized contacts at daycare and school and permitted Anthony to have contact with the children when accompanied by Stephanie. Regarding the "jurisdiction" of the paternity order, Judge Allen indicated that he would seek a conference with Judge Dow pursuant to Illinois Supreme Court Rule 903 in order to "make sure we are in the appropriate courtroom." See Ill. S. Ct. R. 903 (eff. Mar. 8, 2016) (requiring that "[w]henever possible and appropriate, all child custody and allocation of parental responsibilities proceedings relating to an individual child shall be conducted by a single judge"). The record does not establish that the probate and paternal proceedings were consolidated, nor is there any indication in the record regarding the status or enforcement of the order in the paternity proceeding.

¶ 14    On August 21, 2017, Anthony filed a verified motion to vacate the order appointing a guardian *ad litem*. The motion was prepared by Natalie Cappetta and listed both the Cappetta firm and the Rizzo & Diersen firm as counsel for petitioner. The Grossis filed a response on August 31, 2017, seeking to have Anthony's motion dismissed. The matter was scheduled for hearing on October 17, 2017.

¶ 15    Also, on August 31, 2017, the Grossis filed an amended petition for guardianship of the children in the case docketed as case No. 17-P-528. The record contains no responsive pleading and remains pending.

¶ 16    On September 23, 2017, the Grossis filed a motion to disqualify Natalie Cappetta, Frederick Cappetta, and Greg LaCost. The motion, filed in the Grossi guardianship petition (17-P-528) alleged that these attorneys were in violation of Rule 1.7 of the Illinois Rules of Professional Conduct of 2010 (eff. Jan. 1, 2010) (Rules of Professional Conduct). Specifically, the disqualification motion alleged that the named attorneys represented both Anthony Loader and Stephanie Loader and that each of these parties were in conflict with one another due to Stephanie's petition seeking court approval of her short-term guardianship while Anthony sought custody of the children in his own right as their biological father. The motion to disqualify was noticed for hearing on September 25, 2017. Following a brief hearing, and without an opportunity for written response, the court found that the attorneys were in violation of Rule 1.7 of the Rules of Professional Conduct and granted the motion to disqualify Natalie Cappetta, Frederick Cappetta, and Greg LaCost.

¶ 17        On October 12, 2017, the disqualified attorneys filed a motion to reconsider on behalf of both Anthony Loader and Stephanie Loader maintaining that (1) the court abused its discretion in hearing the motion to disqualify as an "emergency motion" without giving the respondents sufficient time to prepare a response, (2) the court's granting of the motion to disqualify without sufficient opportunity to respond constituted a denial of the procedural due process rights of adequate notice and opportunity to respond, (3) the Grossis lacked standing to bring a charge of violation of Rule 1.7, as the Rule does not extend a right to third parties not covered by an attorney-client relationship, (4) the court's finding of that counsel was in violation of Rule 1.7 was erroneous as a matter of law, and (5) any claim to disqualification pursuant to Rule 1.7 had been waived by lack of timely action by the Grossis. The circuit court denied the motion to reconsider.

¶ 18        Anthony and Stephanie petitioned this court for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(7) (eff. July 1, 2014), which this court granted.

¶ 19                                    ANALYSIS

¶ 20        Anthony maintains on appeal that the trial court erred in disqualifying his attorneys. While his appeal raises all five arguments raised in his motion to the trial court to reconsider its order disqualifying his attorneys, we will limit our analysis to three issues: (1) whether the Grossis had standing to raise the issue of a conflict of interest between Anthony and Stephanie, (2) whether the Grossis waived their right to seek disqualification of counsel by failing to raise the issue earlier in the proceedings, and (3) whether the trial court abused its discretion in granting the motion to disqualify counsel.

¶ 21                                I. Standard of Review

¶ 22        Attorney disqualification is a drastic measure because it destroys an established attorney-client relationship and prohibits a party from retaining the counsel of their choice. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 178 (1997). Because disqualification impacts the right to counsel of the client's choosing, disqualification is considered a drastic action to be taken by the court only where the Rules of Professional Conduct preclude continued representation. *Id.* A party seeking to disqualify opposing counsel bears a heavy burden of proving a conflict of interest. *In re Possession & Control of the Commissioner of Banks & Real Estate of Independent Trust Corp.*, 327 Ill. App. 3d 441, 478 (2001). Motions to disqualify opposing counsel are to be viewed with extreme caution since these motions can be used as a means to harass opposing counsel and interfere with the attorney-client relationship. *In re Estate of Wright*, 377 Ill. App. 3d 800, 804 (2007); *In re Estate of Klehm*, 363 Ill. App. 3d 373, 377 (2006).

¶ 23        A trial court's decision on whether to disqualify counsel will not be disturbed absent an abuse of discretion. *International Insurance Co. v. City of Chicago Heights*, 268 Ill. App. 3d 289, 302 (1994). An abuse of discretion occurs where a trial court's decision is arbitrary, unreasonable, or unsupported by the evidence of record or where no reasonable person would agree with the position taken by the trial court. *Schwartz*, 177 Ill. 2d at 176. We note that there is a line of case law holding that we "interpret the Illinois Rules of Professional Conduct in the same manner as statutes" and "[t]he construction of the Illinois Rules of Professional Conduct is a question of law, to which we apply *de novo* review." *In re Marriage of Stephenson*, 2011 IL App (2d) 101214, ¶ 26 (citing *Macknin v. Macknin*, 404 Ill. App. 3d 520, 530-31 (2010)).

While we reverse the trial court's disqualification order only if we find an abuse of discretion, we will apply *de novo* review to the trial court's interpretation of the supreme court rule at issue. *Stephenson*, 2011 IL App (2d) 101214, ¶ 26; *Macknin*, 404 Ill. App. 3d at 530.

¶ 24                              II. Illinois Rule of Professional Conduct 1.7

¶ 25    In disqualifying counsel in the instant matter, the trial court relied upon Rule 1.7 of the Illinois Rules of Professional Conduct, which concerns matters arising from the representation of two or more parties in the same proceedings. Rule 1.7 provides in relevant part:

"(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against the another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent." Ill. R. Prof'l Conduct (2010) R.1.7 (eff. Jan. 1, 2010).

¶ 26                              III. Standing to Seek Disqualification Under Rule 1.7

¶ 27    Appellants maintain that the Grossis' motion to disqualify opposing counsel should have been denied based upon a lack of standing to bring the motion. In order to determine whether the trial court abused its discretion in ordering counsel disqualified, we must first address whether the Grossis had standing to raise a Rule 1.7 violation and seek disqualification of opposing counsel. A party does not have standing to challenge opposing counsel's ability to represent a client without some showing that the representation adversely affects interests of the party challenging opposing counsel's representation. *Jones v. Brown-Marino*, 2017 IL App (1st) 152852, ¶ 13; *Lavaja v. Carter*, 153 Ill. App. 3d 317, 326 (1987); *Evink v. Pekin Insurance Co.*, 122 Ill. App. 3d 246, 250 (1984) (moving party has no standing to challenge opposing counsel's representation of multiple parties without some showing that this representation adversely affected the moving party's interests); see generally Eric C. Surette, Annotation, *Standing of Person, Other Than Former Client, to Seek Disqualification of Attorney in Civil Action*, 72 A.L.R. 6th 563 (2012).

¶ 28    In the instant matter, the Grossis maintain they made a sufficient showing that the same counsel being allowed to represent Anthony and Stephanie in these proceedings adversely affected their interests. Specifically, they maintain that it was unfair to them to allow Anthony and Stephanie to pursue two contradictory theories: (1) Anthony's argument that he was able

to take custody and control of the children and (2) Stephanie's argument that Anthony was not able to take custody and control of the children giving rise to her claim to custody of the children as Anthony's appointed short-term guardian. The Grossis' argument that they were adversely affected by counsels' representation of both Anthony and Stephanie fails for two reasons: (1) throughout these proceedings, Anthony and Stephanie did not take inconsistent positions, and (2) to the extent that Anthony and Stephanie were presenting alternative pleadings, the Grossis failed to establish how the same counsel presenting alternative pleadings adversely affected their ability to respond to each alternative argument.

¶ 29 Our review of the record and the pleadings clearly shows that Anthony and Stephanie pursued a consistent objective: securing custody of the children for Anthony. Beginning with Anthony's execution of the statutory short-term guardianship form appointing Stephanie as guardian, it was abundantly clear that they were taking a consistent position that Anthony was entitled to custody of the children and was authorized pursuant to statute to designate Stephanie as their short-term guardian. 755 ILCS 5/11-5.4 (West 2016). The appointment form executed by Anthony set clear parameters for origination and termination of Stephanie's guardianship. The document executed by Anthony stated that guardianship was to begin "[o]n the date that I state in writing that I am no longer either willing or able to make and carry out day-to-day child care decisions" and was to terminate "[o]n the date that I state in writing that I am willing and able to make and carry out day-to-day child care decisions concerning [each] child, but not more than 365 days after the effective date" of the form. The form was executed on June 1, 2017. When Stephanie filed her petition for guardianship on June 5, 2017, she was clearly seeking guardianship solely under the short-term guardianship designated by Anthony under section 11-5.4 of the Probate Act. We know this because she attached a copy of the short-term guardianship form executed by Anthony to her petition and she stated in her affidavit filed with her petition that she was seeking appointment as guardian as Anthony's designee and that she acknowledged that her appointment would cease on the date that Anthony stated in writing that he is willing and able to make and carry out day-to-day child care decisions concerning the children.

¶ 30 Likewise, when Anthony filed his petition to establish custody, he made it clear that Stephanie was designated as a "necessary party" and in his prayer for relief sought that the Grossis be ordered to surrender the children to him "or Stephanie Loader, Guardian." In short, there is nothing in this record to establish that Anthony and Stephanie took contrary and antagonistic positions at any point in these proceedings. Anthony and Stephanie sought the same relief from the trial court. Stephanie only wanted guardianship if Anthony was unable to assume parental responsibility, and Anthony wanted Stephanie to be guardian only while he was unable to parent. Nowhere in any pleading does Stephanie take a position hostile to Anthony. When Anthony filed his pleadings seeking custody of the children, Stephanie did not oppose any of those pleadings. When Anthony sought custody of the children, he included Stephanie as a necessary party and specifically asked the court to permit her to be temporary guardian if it were to find him unable to take on parental responsibilities. The Grossis' position that they were prejudiced by the positions taken by Anthony and Stephanie is not supported by the record, and the trial court's agreement with their position was an abuse of discretion.

¶ 31 Moreover, even if Anthony and Stephanie sought alternative relief in their respective pleadings, the Grossis failed to establish how they were prejudiced by the same counsel representing both Anthony and Stephanie. Even if their positions were not directly aligned,

there was nothing prejudicial to the Grossis in allowing the same counsel to represent both parties. There was no tactical advantage to the same representation, and the Grossis have not proven any way in which they were disadvantaged by the common representation. The record contains no evidence proving that the Grossis were prejudiced by Anthony and Stephanie sharing counsel. Since it was the Grossis' burden to prove they were prejudiced in order to have standing to move to disqualify opposing counsel, and since they failed to prove prejudice, the Grossis lacked standing to bring the disqualification motion. The trial court abused its discretion in finding otherwise.

¶ 32                                IV. Waiver

¶ 33        Although our finding that the Grossis lacked standing to bring their motion to disqualify opposing counsel is dispositive as to their position, we will briefly address Anthony's argument that the Grossis waived any objection to opposing counsel representing both Anthony and Stephanie. A party waives any objection to an alleged conflict of interest "if it fails to assert that conflict promptly." (Internal quotation marks omitted.) *In re Commissioner*, 327 Ill. App. 3d at 479. In an effort to "discourage tactical gamesmanship," courts have determined that motions to disqualify should be made with "reasonable promptness after a party discovers the facts [that lead] to the motion." (Internal quotation marks omitted.) *In re Estate of Klehm*, 363 Ill. App. 3d at 377. In the instant matter, Stephanie filed her petition on June 5, 2017, and Anthony filed his petition for custody on June 26, 2017. The Grossis did not seek to have opposing counsel disqualified until September 22, 2017, some three months later. While three months might, or might not, seem like sufficient time for Grossis' counsel to discover that opposing counsel represented both Anthony and Stephanie, we cannot help but observe that the motion to disqualify came only after Anthony had prevailed on the Grossis' guardianship petition (17-F-469) and his own parentage petition (17-P-569). Anthony was two for two and heading into the final round when the Grossis suddenly discovered the alleged conflict in opposing counsel representing Anthony and Stephanie.

¶ 34        Whether a party has waived a conflict is a matter for the discretion of the trial court and will only be overturned on appeal if there has been an abuse of discretion. *International Insurance Co.*, 268 Ill. App. 3d at 302-03. It is clearly apparent from the record that the Grossis raised this objection only as a tactical maneuver. To the extent that the Grossis ever had a case to present in favor of disqualification, their allowing the courts to make two substantive rulings before raising the issue effectively waived the issue where there was no evidence to support the trial court's finding to the contrary. *Id.*

¶ 35                        V. Existence of Conflict Under Rule 1.7

¶ 36        Our holding that the Grossis lacked standing to raise a challenge to opposing counsels' representation of both Anthony and Stephanie is not dispositive. Because the trial court had authority to disqualify counsel on its own motion, we must address independently whether counsels' representation actually violated Rule 1.7 and whether the trial court erred in disqualifying counsel on that basis. *SK Handtool Corp. v. Dresser Industries, Inc.*, 246 Ill. App. 3d 979, 989 (1993) (courts have independent responsibility to prevent conflicts in order to protect attorney-client relationships and ensure the integrity of judicial proceedings); *La Salle National Bank v. Triumvera Homeowners Ass'n*, 109 Ill. App. 3d 654, 664 (1982) (courts have authority to *sua sponte* disqualify counsel to enforce absolute loyalty and

protection of client confidences). However, given the serious nature of a decision to disqualify counsel, a reviewing court will not presume that the trial court acted correctly where the court has not set forth specific grounds for disqualification under the rules. *Muellman-Cohen v. Brak*, 361 Ill. App. 3d 52, 54 (2005).

¶ 37    After reviewing the record, we find that counsel's representation of both Anthony and Stephanie did not constitute a violation of Rule 1.7. We find, therefore, that the court abused its discretion in disqualifying counsel.

¶ 38    The court's order disqualifying counsel did not provide any details regarding the specific provision of Rule 1.7 that was violated. We must, therefore, consider each section of the rule separately. We start by noting that the rule provides for two distinct types of "concurrent" conflicts that require disqualification. Rule 1.7(a)(1) defines a concurrent conflict as one where "the representation of one client will be directly adverse to another client," *i.e.*, a directly adverse conflict. Ill. R. Prof'l Conduct (2010) R. 1.7(a)(1) (eff. Jan. 1, 2010). Similarly, Rule 1.7(a)(2) defines a concurrent conflict as one where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer," *i.e.*, a material limitation conflict. Ill. R. Prof'l Conduct (2010) R. 1.7(a)(2) (eff. Jan. 1, 2010). The rule separates these two subsections with the conjunction "or," thereby designating each as a distinct form of "concurrent" conflict. See *Hedrick v. Bathon*, 319 Ill. App. 3d 599, 605 (2001). Thus, our first task is to determine whether the court found the alleged conflict between Anthony and Stephanie to be a "directly adverse conflict" or a "material limitation conflict." Once it has been determined which conflict has arisen between the parties, a court can then proceed to determine whether, under Rule 1.7(b), the conflict can be overcome by informed consent.

¶ 39    Disqualification under the "directly adverse" conflict provision of Rule 1.7(a)(1) requires a finding that counsel's representation of two or more clients in the same proceeding presents an *actual* conflict of interests where those interests are *directly* antagonistic. *In re Commissioner*, 327 Ill. App. 3d at 479-80; *Chandra v. Chandra*, 2016 IL App (1st) 143858, ¶ 34 ("[t]here must be a substantial basis for believing that an actual conflict of interest exists in order to disqualify [an] attorney from [his or her] representation of multiple clients, not merely a potential or speculated one"). In other words, an actual and direct conflict exists only where counsel is, in effect, "on both sides of the lawsuit." *Chandra*, 2016 IL App (1st) 143858, ¶ 34. " 'Vague and general inconsistencies of position giving rise to hypothetical conflicts in the mind of an opposing party will not justify so drastic a measure as disqualification.' " (Internal quotation marks omitted.) *In re Commissioner*, 327 Ill. App. 3d at 478-79 (quoting *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1423 (N.D. Ill. 1997)). Moreover, disqualification " 'may not be rested on mere speculation that a chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur.' " *Guillen*, 956 F. Supp. at 1422 (quoting *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 145-46 (4th Cir. 1992)).

¶ 40    In the instant matter, as we discussed in full when addressing the question of standing, no reasonable interpretation of the facts would lead to a finding that Anthony and Stephanie had an actual and direct conflict. Our review of the record clearly established that Anthony and Stephanie did not have a direct conflict at any time during these proceedings. With regard to Anthony's stated goal of securing his parental rights over his children, Stephanie's involvement was completely consistent with Anthony's objective. The record establishes that

there were initially four separate proceedings: Stephanie's guardianship petition (17-P-458); the Grossis' first guardianship petition (17-F- 469); Anthony's paternity petition (17-F-569); and the Grossis' second guardianship petition (17-P-528). Looking at the goals and interests of Anthony and Stephanie in each action, we find that they were completely aligned at all times. Anthony was seeking custody of his children, with Stephanie acting as his designated short-term guardian until he stated in writing that he was able to exercise his parental responsibilities. Likewise, Stephanie filed the guardianship petition in order to seek enforcement of Anthony's wishes regarding his children as he expressed when he executed the short-term guardianship form. As we noted previously, there was not one single pleading by either Anthony or Stephanie that indicated they had an actual and direct conflict over the relief being sought or the positions to be taken in seeking that relief. It was therefore an abuse of discretion for the trial court to have found that an actual and direct conflict existed between Anthony and Stephanie that required their counsel to be disqualified.

¶ 41 Similarly, disqualification under the "material limitation conflict" provision of Rule 1.7(a)(2) requires a showing that "there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests." Ill. R. Prof'l Conduct (2010) R. 1.7(a)(2) cmt. 8 (adopted July 1, 2009). Where counsel represents two parties not in actual and direct conflict, the critical questions in determining the existence of a material limitation conflict are "the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should have been pursued on behalf of the client." *Id.*

¶ 42 We have no indication that the trial court specifically considered Rule 1.7(a)(2); however, our review of the record reveals no facts that would support a finding that counsel was materially limited in their representation of both Anthony and Stephanie. There was nothing in the record to show that it was likely that their interests would ever diverge. There was nothing to support the speculation that Stephanie might decide to oppose Anthony in his quest for custody of his children. Likewise, Anthony had no reason to be concerned with a potential future conflict with Stephanie since her involvement in the matter rested entirely on his designation of her as his choice for short-term guardian. Moreover, the record was void of any facts that would suggest that counsel's independent professional judgment in representing either individual was limited. Simply stated, the trial court had no factual basis upon which to conclude that counsel violated Rule 1.7(a)(1) or (2), and its finding that a violation of the Rule required disqualification of counsel was an abuse of discretion.

¶ 43                                         VI. Informed Consent Under Rule 1.7(b)

¶ 44 While we found no support in the record for the trial court's finding that counsel violated Rule 1.7(a)(1) or (2) and the order disqualifying counsel was an abuse of discretion, we must take final note that, had the trial court considered Rule 1.7(b)—which provides parameters under which counsel laboring under a conflict pursuant to Rule 1.7(a)(1) or (2) may nonetheless represent clients subject to either directly adverse or material limitations conflicts, provided the parties give informed consent—the record does not allow us to conclude that Anthony and Stephanie gave informed consent to counsel representing both parties, but such a finding is not necessary to our disposition of this matter. We note, however, that the absence of

any discussion of informed consent further supports our finding that the trial court's ruling disqualifying counsel was arbitrary and not supported by the record.

¶ 45                                    CONCLUSION

¶ 46        Accordingly, for the reasons set forth above, we reverse the order of the circuit court of Will County disqualifying attorneys Natalie Cappetta, Frederick Cappetta, and Gregory LaCost from representing Anthony Loader and Stephanie Loader in these proceedings. The matter is remanded to the circuit court for further proceedings consistent with this disposition.

¶ 47        Disqualification order reversed; cause remanded.