2022 IL App (1st) 210800-U

No. 1-21-0800

Order filed July 14, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF MARY MAROL MATTEIS, Deceased | ) ) | Appeal from the Circuit Court of |
| (Giovanni Matteis, Petitioner-Appellee; and Marol State, LLC, Marol Rush, LLC, Ralph W. Marol, Individually and in his Capacity as Manager of Marol State, LLC, and Marol Rush, LLC, and Matthew Marol, Respondents-Appellants). | ) ) ) ) ) ) ) | Cook County.<br><br>No. 20 P 1580 |
| ----------------------------------------------------------------------- | ) | |
| RALPH W. MAROL, Individually and in his Capacity as Manager of Marol State, LLC, and Marol Rush, LLC, MAROL STATE, LLC, and MAROL RUSH, LLC, | ) ) ) ) | Consolidated |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 20 CH 4401 |
| BYLINE BANK, Successor Trustee of The Mary Marol Matteis Declaration of Trust dated September 6, 2006, and The Mary Marol Matteis Declaration of Trust dated September 6, 2006, | ) ) ) ) ) | |
| Defendants | ) ) | |
| (Giovanni Matteis, Petitioner-Appellee; and Matthew Marol, Respondent-Appellant). | ) ) ) | Honorable Terrence J. McGuire, Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Rochford and Martin concurred in the judgment.

**ORDER**

¶ 1     *Held*:     (1) Petitioner, who was entitled to distributions from a trust that consisted of the decedent's interests in two companies, had standing to move to disqualify opposing counsel because petitioner had a legally cognizable interest that was threatened by the companies' and their individual members' joint representation by the same counsel.

(2) The trial court did not abuse its discretion by disqualifying counsel from jointly representing the two companies and their members in their individual capacities because there was a significant risk that counsel's joint representation of one or more clients would be materially limited by counsel's responsibilities to another client.

¶ 2     In litigation involving, *inter alia*, the parties' disagreement about the nature and extent of their ownership, management, and participation rights in two companies, *i.e.*, Marol State, LLC and Marol Rush, LLC, the trial court entered an order disqualifying the companies' counsel of record from jointly representing both the two companies and their members, Ralph and Matthew Marol, individually. The court allowed counsel to represent either the two companies or Ralph and Matthew.

¶ 3     On appeal, appellants Marol State, LLC, Marol Rush, LLC, and Ralph and Matthew Marol argue that appellee Giovanni Matteis's motions to disqualify their counsel was a tactical weapon to harass them and they have been deprived of their fundamental right to counsel of their choice. They also argue that Giovanni lacked standing to assert the attorney disqualification motions and the trial court erroneously disqualified their counsel based on a mere potential conflict of interest.

¶ 4    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                                    I. BACKGROUND

¶ 6    In April 2020, a probate case was filed to administer the estate of decedent Mary Marol Matteis, who died testate in March 2019. Her sole heir at law is her surviving spouse, appellee Giovanni Matteis, but he was not a legatee under her will. Appellant Ralph Marol is decedent's brother. Appellant Matthew Marol is Ralph's son and decedent's nephew. As of January 2021, Byline Bank is the successor trustee of decedent's trust and successor executor of her estate.

¶ 7    During her lifetime, decedent established The Mary Marol Matteis Declaration of Trust, dated September 6, 2006. The trust was amended and restated on September 23, 2008, and again on October 8, 2016. The trust is the sole legatee under decedent's will, dated October 8, 2016.

¶ 8    Decedent died owning a 50% interest of two limited liability companies, *i.e.*, appellants Marol State, LLC and Marol Rush, LLC (collectively, the companies), which held and managed parcels of real estate. Also, decedent was a member of the companies at the time of her death. During decedent's lifetime, Ralph was the other 50% owner of the companies. Both Ralph and decedent were co-managers of the companies. After decedent's death, Matthew became a manager and member of both companies.

¶ 9    During her lifetime, decedent assigned on October 16, 2016, her economic interest in the companies to herself in her capacity as the trustee of the trust. She was the sole beneficiary of the trust until her death. Her will stated that after personal effects were distributed, the estate residue was to be distributed to the trust. The trust agreement provided that, after her death, the trust residue

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

would be divided into a marital trust and a family trust. During his lifetime, Giovanni would be entitled to mandatory income distributions and discretionary principal distributions from the marital and family trusts for reasonable support, maintenance and health. Upon Giovanni's death, Matthew would receive the trust corpus.

¶ 10     In May 2020, the probate court granted the executor's petition for issuance of citations to discover assets against Ralph, Matthew, the companies, and the companies' accountants. The petition sought information regarding the management and finances of the companies, including profit and loss statements, tax records, bank statements, payroll records, and management records.

¶ 11     In June 2020, Ralph, individually and on behalf of and as a manager of the companies, and the companies, by their counsel Robbins, Salomon & Patt, Ltd. (Robbins),[2] filed a chancery case against the trustee, seeking a declaratory judgment regarding issues related to the trust, the citation proceedings, and the ownership of the companies. Specifically, Ralph and the companies sought entry of a judgment that the trust and estate were not members of the companies, were limited to transferee interests only, and thus were not entitled to review the companies' books and papers.

¶ 12     Also in June 2020, Robbins filed in the probate case its appearance on behalf of Ralph and the companies and moved the court to issue a protective order to supervise and limit discovery pending resolution of Ralph and the companies' contemporaneous action for declaratory relief in chancery court.

¶ 13     In July 2020, Giovanni filed in the probate case petitions to issue citations to recover assets against the companies, and the citations were issued in August 2020. In response, Robbins moved

_____

[2] Effective January 11, 2022, Robbins, Saloman & Patt, Ltd. changed its name to Robbins DiMonte, Ltd.

to dismiss the recovery citations on behalf of the companies, arguing that decedent was dissociated from the companies at the time of her death as a matter of law and the most her estate could claim was a distributional interest.

¶ 14    In October 2020, Giovanni filed a renunciation of decedent's will.

¶ 15    In November 2020, the probate court denied Ralph and the companies' motion for a protective order.

¶ 16    Also in November 2020, Robbins appeared in the probate case on behalf of Matthew, in his capacity as a qualified trust beneficiary.

¶ 17    In December 2020, Giovanni filed substantively identical motions in the probate and chancery cases to disqualify Robbins as counsel for the companies, Ralph, and Matthew. Giovanni argued that Robbins' joint representation of the companies, Ralph and Matthew violated Rule 1.7 of the Illinois Rules of Professional Conduct of 2010 (Conduct Rules) (eff. Jan. 1, 2010). Giovanni asserted that Robbins, by representing the companies, has an existing duty to decedent's estate and trust as the present holder of decedent's interest in the companies. Giovanni claimed there was a significant risk that Robbins' responsibilities to Ralph and Matthew, individually, would materially limit Robbins' representation of the companies, particularly because Matthew might receive a diminished interest in decedent's trust based on Giovanni's renunciation of decedent's will.

¶ 18    In February 2021, the probate and chancery cases were consolidated.

¶ 19    In their March 2021 response to Giovanni's motions to disqualify, Ralph, Matthew and the companies argued that (1) Giovanni lacked standing to seek Robbins' disqualification, (2) Giovanni failed to establish the existence of a conflict, (3) counsel may represent both a

business entity and its members, and (4) Giovanni waived his right to object to Robbins' representation by failing to raise the conflict issue until six months after Robbins filed its appearances.

¶ 20    In his reply, Giovanni argued, *inter alia*, that Robbins owed him a duty as a third-party beneficiary of Robbins' representation of the companies based on Giovanni's interest in decedent's estate and trust, which held decedent's interest in the companies.

¶ 21    On June 10, 2021, the trial court granted in part and denied in part Giovanni's motions to disqualify Robbins. The court ruled that Robbins could not jointly represent Ralph, Matthew and the companies, but could continue to represent either the companies or the individuals in the present litigation. Specifically, the court found that Giovanni had standing to bring the motions to disqualify Robbins and did not waive his right to object to Robbins' representation of Ralph, Matthew and the companies. The court also found that Robbins could not represent Ralph, Matthew and the companies in the same matters because Robbins owed each client a fiduciary duty to act in the client's best interest, but the clients' interests could conflict with each other and thereby compromise Robbins' ability to act in the best interest of all its clients. Although the interests of Robbins' clients currently were not in conflict, the court recognized the significant and likely potential that a conflict could arise because the case was complex, all the parties were closely related, and about 15 matters involving the parties were currently pending before the court. Accordingly, the court determined that it was necessary to minimize the significant risk of potential conflict because the court and parties would suffer serious hardship if a substitution of counsel was required later in the litigation upon the manifestation of a conflict.

¶ 22    Ralph, Matthew and the companies timely petitioned this court for leave to appeal under Illinois Supreme Court Rule 306(a)(7) (eff. Oct. 1, 2020), to challenge the propriety of the trial court's order disqualifying Robbins as their counsel. In August 2021, this court allowed the petition.

¶ 23                                        II. ANALYSIS

¶ 24    On appeal, the companies, Ralph and Matthew argue that disqualification was not absolutely necessary here, nor was it properly supported by the record, since the trial court disqualified their counsel based on a potential, rather than an actual, conflict of interest. They argue that they have been deprived of their fundamental right to counsel of their choice because Giovanni, who lacked standing to assert his disqualification motion, used disqualification as a tactical weapon to harass them. Further, they argue that the trial court's ruling ignored their waivers of any potential conflicts of interest, their counsel's affidavit regarding counsel's ability to provide competent and diligent representation to appellants in this matter, and relevant provisions of Conduct Rules 1.7 and 1.13 (eff. Jan. 1, 2010).

¶ 25    The ability of decedent's estate and trust to inherit her membership interest in the companies (and thus the ability of Giovanni to inherit decedent's membership interest through the estate) is an issue in dispute between the parties that is still pending in the trial court. Specifically, the companies, Ralph and Matthew argue that (1) the companies' operating agreements and Illinois law bar any individual or entity from succeeding to membership in the companies absent the consent of all the members, (2) Ralph never consented to the admission of decedent's trust as a member of either of the companies, and (3) the greatest interest the estate, trust, and Giovanni have received or can receive in the companies is a mere distributional interest. Our review of this appeal,

however, is limited to the issue of Robbins' disqualification from representing both the companies and Ralph and Matthew in their individual capacities.

¶ 26                          A. Supreme Court Rule 341

¶ 27    First, we address appellants' claim urging us to strike in whole or in part Giovanni's brief for failure to comply with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020) because the brief omits the table of contents and the points and authorities section required by Rule 341(i) and 341(h)(1). Appellants also argue that Giovanni's brief asserts facts and conclusions about Robbins' representation of, and duties owed to, its clients without citation to the record or any authority, in violation of Rule 341(h)(7).

¶ 28    Where violations of supreme court rules are not so flagrant as to hinder or preclude review, the striking of a brief in whole or in part may be unwarranted. *Cottrill v. Russell*, 253 Ill. App. 3d 934, 938 (1993). Giovanni's failure to include the table of contents and points and authorities sections and cite the record or supporting authority for certain assertions of facts and conclusions are not so flagrant as to hinder our analysis. We conclude that Giovanni's properly asserted facts and legal citations are sufficient to permit review of the instant appeal. Thus, we do not strike Giovanni's brief in its entirety but will disregard those portions that do not comport with the supreme court rules.

¶ 29                               B. Standing

¶ 30    Appellants argue that the trial court erred when it ruled that Giovanni had standing to bring his motions to disqualify Robbins as their counsel based on an alleged potential conflict of interest among appellants. Appellants state that there is no dispute that Robbins never represented Giovanni, decedent's estate or trust, or Byline Bank as the successor executor of decedent's estate

and as the successor trustee of her trust.[3] Appellants argue that Giovanni does not have standing to challenge Robbins' ability to represent the companies, Ralph and Matthew because Giovanni failed to show that the representation adversely affects his interests.

¶ 31    Giovanni argues that the trial court did not err by finding that the risk of harm to him from Robbins' continued representation of all appellants was sufficient to vest him with standing to bring his motions to disqualify even though he had not been represented by Robbins. He asserts that as decedent's surviving spouse, sole heir of her estate, primary beneficiary of her trust, petitioner of the recovery citations that seek the return to decedent's estate of the interests in the companies, movant of a motion to dismiss the companies' declaratory judgment action in the chancery court, and potential owner of a 25% interest in the companies pending court determination of that matter, he is the primary party affected by any decisions made regarding decedent's interests in the companies. Giovanni argues that, despite his status as the primary beneficiary of the trust and sole heir of the estate, Robbins has attempted to block his access to any information about the companies and restrict the interests and rights that decedent's estate and trust have in the companies.

¶ 32    Giovanni also argues that Robbins' joint representation of the companies, Ralph and Matthew puts Robbins in a conflict of interest situation based on its conflicting obligations to represent the companies' interests and maximize Matthew's interest in the trust. Giovanni asserts that the companies presumably are paying all the attorney fees for Robbins' representation of the companies and Matthew but are not providing this same benefit to Giovanni. Citing caselaw for

---

[3] The record indicates that Robbins represented the companies during decedent's lifetime when she was a member and manager of the companies with respect to various real estate leasing matters. Also, Robbins represents Byline Bank in other unrelated cases in the bank's individual capacity as a lender of funds to borrowers.

the proposition that an attorney may owe a duty to a third party when a client has hired the attorney for the purpose of benefitting a third party, Giovanni argues that Robbins owes him a duty because Robbins owes a duty to the companies, which includes not representing the interests of one owner over the interests of another owner, and Giovanni, as decedent's surviving spouse, could be found to own an interest in the companies by virtue of his renunciation of decedent's will, and thus could be injured by Robbins' representation of the companies.

¶ 33    The issue of standing presents a question of law that this court reviews *de novo. Powell v. Dean Foods Co.*, 2012 IL 111714, ¶ 36; see also *Thomas v. Weatherguard Construction Company, Inc.*, 2015 IL App (1st) 142785, ¶ 63 (under *de novo* review, the reviewing court performs the same analysis the trial court would perform). Since lack of standing is an affirmative defense, the burden of pleading and proving the defense is on the party asserting it. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010).

¶ 34    "In Illinois, standing is established by simply demonstrating some injury to a legally cognizable interest." *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 745 (2009) (citing *Village of Chatham v. County of Sangamon*, 216 Ill. 2d 402, 419 (2005)). " 'The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit' " and " 'assures that issues are raised only by those parties with a real interest in the outcome of the controversy.' " *Mortgage Electronic Registration Systems, Inc. v. Barnes*, 406 Ill. App. 3d 1, 6 (2010) (quoting *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999)); see also *Lynch v. Devine*, 45 Ill. App. 3d 743, 747-48 (1977) (the purpose of the doctrine of standing is to ensure that courts are deciding actual, specific controversies, and not abstract questions or moot issues); *Commonwealth Edison Co. v. Community Unit School District No. 200*, 44 Ill. App. 3d 665, 670

(1976) (although standing is designed to preclude persons having no interest in a controversy from bringing suit, it should not preclude a valid suit from being litigated). For an injury to a legally cognizable interest to give rise to standing, the claimed injury may be actual or threatened, and it must be: (1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief. *Fitch v. McDermott, Will & Emery, LLP*, 401 Ill. App. 3d 1006, 1028 (2010) (citing *Glisson*, 188 Ill. 2d at 221).

¶ 35    A party does not have standing to challenge opposing counsel's ability to represent a client without some showing that the representation adversely affects the interests of the party challenging opposing counsel's representation. *Jones v. Brown-Marino*, 2017 IL App (1st) 152852, ¶ 13; *Lavaja v. Carter*, 153 Ill. App. 3d 317, 326 (1987); *Evink v. Pekin Insurance Co.*, 122 Ill. App. 3d 246, 250 (1984); see generally Eric C. Surette, Standing of Person, Other than Former Client, to Seek Disqualification of Attorney in Civil Action, 72 A.L.R. 6th 563 (2012).

¶ 36    "Whether the plaintiff has standing to sue is to be determined from the allegations contained in the complaint." (Internal quotation marks omitted.) *Barber v. City of Springfield*, 406 Ill. App. 3d 1099, 1101 (2011). However, a plaintiff need not allege facts establishing standing. *Wagner*, 391 Ill. App. 3d at 745. A defendant has the burden to both plead and prove the plaintiff's lack of standing. *Burnette v. Stroger*, 389 Ill. App. 3d 321 (2009) (citing *Chicago Teachers Union, Local 1 v. Board of Education*, 189 Ill. 2d 200, 206 (2000)). Applying these principles here, we will look to the allegations of the parties' petitions and responses to determine whether Giovanni had standing and whether the companies, Ralph and Matthew carried their burden to prove that

Giovanni lacked standing. See *In re Estate of Burgeson*, 125 Ill. 2d 477, 485 (1988) (standing is a component of justiciability, and therefore must be defined on a case-by-case basis).

¶ 37    Whereas the beneficiary of a will has no interest until the death of the testator, the beneficiary of a trust has an interest the moment the trust is created and "[t]he fact that a beneficiary's actual enjoyment of the trust *res* is contingent upon the settlor's death does not negate the existence of a present interest in the beneficiary during the settlor's lifetime." *In re Estate of Michalak*, 404 Ill. App. 3d 75, 83 (2010) (under the original trust document, the beneficiaries of an *inter vivos* trust had an equitable remainder interest, which vested immediately upon the creation of the trust, and therefore had standing to challenge the validity of an amendment to that trust which removed them as beneficiaries).

¶ 38    For purposes of standing, Giovanni, as decedent's sole heir and beneficiary of her trust, has an interest in the companies to the extent that they are or will be deemed to be holding property of the estate or trust. Although Giovanni's ownership interest has not yet been determined by the trial court, the trial court believed that it needed to address Giovanni's disqualification motions before addressing the other 15 pending matters and making the final determination regarding any ownership interest Giovanni may have in the companies. Therefore, although Giovanni's ownership interest is uncertain at this time, his potential interest is sufficient to vest him with standing to bring the motions to disqualify Robbins. Furthermore, Giovanni is facing a threat of injury to his interest that is distinct and palpable, fairly traceable to the actions of appellants, and substantially likely to be prevented by disqualifying Robbins from jointly representing all of the appellants. Under the trust provisions, Giovanni is entitled to mandatory income and discretionary principal distributions from the trust for his reasonable support, maintenance and health, but the

companies' decision to make those payments to the trust for distribution to Giovanni could conflict with Matthew's interests based on his membership in the companies and his interest to receive the trust corpus after Giovanni's death. Moreover, appellants have not carried their burden to prove Giovanni lacked standing where they do not address how the resolution of the multiple matters pending before the trial court would not be affected by Robbins' joint representation of all appellants.

¶ 39 We conclude that Giovanni does face a threatened injury to a legally recognized interest. Furthermore, he believed that removal of a potential conflict of interest due to Robbins' joint representation of all appellants would aid in protecting Giovanni's interest in the *res* of the estate and the trust. The trial court agreed to the extent of Robbins' representation of both the companies and the individuals, as the court entered an order to prevent the significant risk that a conflict of interest could arise between appellants that would prejudice the parties and the court by requiring substitution of counsel at a later time in this complex litigation after many substantive issues would have been already raised and addressed. Consequently, we believe that Giovanni would be benefitted by the relief he sought. See 59 Am. Jur. 2d Parties § 30 (1987) (in deciding whether a party has standing, a court must look at the party to see if he or she will be benefitted by the relief granted). As a result, we conclude that Giovanni had the requisite interest to confer on him standing to move the trial court to disqualify Robbins based on an alleged conflict of interest.

¶ 40 Nevertheless, even if Giovanni lacked standing to move for Robbins' disqualification, the trial court had authority to disqualify counsel on its own motion, so we would address independently whether counsels' representation actually violated Conduct Rule 1.7 and whether

the trial court erred in disqualifying counsel on that basis. See *In re Estate of M.L.*, 2018 IL App (3rd) 170712, ¶ 36.

¶ 41                         C. Attorney Disqualification

¶ 42    A trial court's decision to grant a motion to disqualify an attorney will not be disturbed absent an abuse of discretion. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 176 (1997). An abuse of discretion occurs where a trial court's decision is arbitrary, unreasonable, or unsupported by the evidence of record, or where no reasonable person would agree with the position taken by the trial court. *Id.* A party seeking to disqualify opposing counsel bears a heavy burden of proving a conflict of interest. *In re Possession & Control of the Commissioner of Banks and Real Estate of Independent Trust Corp.*, 327 Ill. App. 3d 441, 478 (2001). Motions to disqualify opposing counsel are to be viewed with extreme caution since these motions can be used as a means to harass opposing counsel and interfere with the attorney-client relationship. *In re Estate of Wright*, 377 Ill. App. 3d 800, 804 (2007); *In re Estate of Klehm*, 363 Ill. App. 3d 373, 377 (2006).

¶ 43    However, because the remedy of disqualification exists, in part, to protect the courts' vital interests in maintaining public confidence in the legal profession and ensuring the integrity of judicial proceedings, " 'any doubts as to the existence of a conflict should be resolved in favor of disqualification.' " *In re Estate of Wright*, 377 Ill. App. 3d at 804 (quoting *SK Handtool Corp. v. Dresser Industries*, 246 Ill. App. 3d 979, 989-90 (1993)); see also *Skokie Gold Standard Liquors v. Joseph E. Seagram & Sons, Inc.*, 116 Ill. App. 3d 1043, 1057-58 (1983). The concern that disqualification motions can be misused for purposes of harassment must be balanced against the need to enforce the canons of legal ethics, which are designed to protect the attorney-client relationship and maintain public confidence in the integrity of the legal profession and the

administration of justice. *Pederson & Houpt, P.C. v. Summit Real Estate Group, LLC*, 376 Ill. App. 3d 681, 685 (2007).

¶ 44     In disqualifying counsel in the instant matter, the trial court relied on Rule 1.7 of the Conduct Rules, which concerns matters arising from the representation of two or more parties in the same proceedings. Conduct Rule 1.7 provides in relevant part:

> "(a) *Except as provided in paragraph (b), a lawyer shall not represent a client if* the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse to another client; or
>>
>> (2) *there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client*, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), *a lawyer may represent a client if*:
>
>> (1) *the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client*;
>>
>> (2) the representation is not prohibited by law;
>>
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>>
>> (4) *each affected client gives informed consent*." (Emphasis Added.) Ill. R. Prof'l Conduct (2010) R. 1.7 (eff. Jan.1, 2010).

Additionally, Rule 1.13 of the Conduct Rules provides that counsel "retained by an organization represents the organization acting through its duly authorized constituents," and allows an attorney representing an organization to "also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of Rule 1.7." Ill. R. Prof'l Conduct (2010) R. 1.13 (eff. Jan. 1, 2010).

¶ 45    We interpret the Conduct Rules in the same manner as statutes. See *Macknin*, 404 Ill. App. 3d at 530. We ascertain and give effect to the intent of the drafter, using the plain and ordinary language of the rule. See *People v. Calabrese*, 398 Ill. App. 3d 98, 120 (2010). Thus, when the language of the rule is clear, we must apply it as written without resort to aids or tools of interpretation. *Skarin Custom Homes, Inc. v. Ross*, 388 Ill. App. 3d 739, 743 (2009). The construction of the Conduct Rules is a question of law, to which we apply *de novo* review. *Macknin*, 404 Ill. App. 3d at 530-31.

¶ 46    According to the record, the trial court had 15 pending matters in this complex case where all the parties were closely related. If the interests of the companies, Ralph individually, Ralph as a member, or Matthew individually were not all wholly consistent for any one of the 15 matters before the trial court, then Robbins' representation of one of its clients would be limited by its responsibilities to another client. The parties' main dispute involves the provision that decedent's trust was to be funded by her ownership interest in the companies. Furthermore, Giovanni currently was entitled to receive during his lifetime mandatory income and discretionary principal distributions from the trust for his reasonable support, maintenance and health, whereas Matthew would receive the trust corpus after Giovanni's death. If the companies have a current obligation to transfer decedent's ownership share of the companies to her trust, this obligation would conflict

with Matthew's interest to delay the transfer of funds to the trust during Giovanni's lifetime. The record supports the trial court's finding that there is a significant and likely risk that Robbins' representation of all the appellants would be materially limited by Robbins' separate responsibilities to the companies as opposed to the individuals under these circumstances, in violation of Conduct Rule 1.7(a)(2) based on the existence of a concurrent conflict of interest. Despite Robbins' belief that it would be able to provide competent and diligent representation to all the appellants, and each client's informed consent, the plain language of Conduct Rule 1.7 provides that trial court has discretion to disqualify counsel based upon the existence of a concurrent conflict of interest.

¶ 47    The trial court issued an extensive written order granting Giovanni's motions to disqualify Robbins. Prior to reaching the merits of the motion, the trial court acknowledged that the right of a party to select counsel of his choice is a matter of significant importance that will not be disturbed absent a specifically identifiable impropriety. Furthermore, the record does not support appellants' claim that the trial court ignored the affidavits of Robbins and the appellants' informed consent because the trial court acknowledged that no conflict of interest currently limited Robbins' representation of appellants.

¶ 48    The trial court observed that the circumstances of this case raised a significant and likely risk that a conflict of interest would arise that would require the substitution of counsel when it would seriously prejudice Giovanni and the court. Accordingly, the trial court concluded that Giovanni met his burden to prove that Robbins must be disqualified from jointly representing both the companies and the individuals but could represent either the companies or the individuals. On appeal, appellants provide us with no basis on which to find the trial court abused its discretion in

granting the motions to disqualify Robbins to this limited extent. We cannot say, and appellants cannot point to, any way the trial court acted arbitrarily, fancifully, or unreasonably in deciding this motion. Therefore, we affirm the trial court's determination.

¶ 49                                    III. CONCLUSION

¶ 50     For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 51     Affirmed.